UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

LaRubInt Corp.,                                        22 Civ. _____

          Plaintiff,

               v.                                      **COMPLAINT**

Joint Stock Company                                    **JURY TRIAL**
Studio Soyuzmultfilm                                   **DEMANDED**

          Defendant.

-----------------------------------------------------------x

          Plaintiff LaRubInt Corp. ("LaRubInt"), for its complaint against defendant Joint

Stock Company Studio Soyuzmultfilm ("SMF"), alleges as follows:

### NATURE OF THE ACTION

          1.     This is a civil action for breach of contract and unjust enrichment.  In

August 2016, plaintiff LaRubInt, a New York corporation, entered into exclusive licensing

agreements with SMF, a storied Russian film studio, which has produced well over a thousand

animated feature films, animated shorts, and cartoon shows and series for television.  The terms

of the license agreements gave LaRubInt the exclusive right, in the defined territories of East and

Southeast Asia, India, the United States, and Canada, to broadly use and market images, goods

and services based on characters from four popular SMF animated series, the most important of

which is "Cheburashka," sometimes referred to as the "Soviet Mickey Mouse."

          2.     However, almost from the agreements' very inception, SMF failed to live

up to its contractual obligations.  Principal among its several breaches, SMF allowed a prior

licensee in Japan to continue to market the very same set of animated characters, under an

exclusive licensing agreement that covered all of Asia, as well as the rest of the world outside of

1

the countries of the former Soviet Union.  As a result, that prior license ran concurrently with the "exclusive" licenses granted to LaRubInt, rendering all of the rights plaintiff had contracted and paid for a nullity, and blocking all avenues to enter the lucrative regional markets under license.

3.      Repeated entreaties by LaRubInt to SMF to protect and enforce plaintiff's licensing rights against the Japanese competitor were met with silence.  When LaRubInt commenced legal proceedings in Japan against the entrenched competitor, SMF refused even to acknowledge, let alone enforce, the LaRubInt license, or to otherwise support LaRubInt's case in the Tokyo court.  As a result, on June 25, 2020, the Tokyo court struck out all of LaRubInt's claims, thereby laying bare the fact that SMF had, in multiple respects, willfully breached its contractual obligations to plaintiff.  The economic and reputational injury to plaintiff is substantial and its losses continue to mount into the tens of millions of dollars.

## PARTIES

4.      Plaintiff LaRubInt is a New York corporation with its principal place of business at 9281 Shore Road, Suite 204, Brooklyn, New York 11209.

5.      LaRubInt provides services related to licensing and distribution of media properties worldwide, including the placement of international television news channels in luxury hotels; the licensing of documentary archives for film, television and digital productions; and the merchandising of animated characters.

6.      Defendant SMF is an entity organized and existing under the laws of the Russian Federation.  Its principal place of business is at 21 Akademika Korolyova Street, Moscow, Russia 127427.

7.      On information and belief, SMF was founded as a Soviet state enterprise by decree of the State Committee on the Arts under the Council of People's Commissars of the

Soviet Union in 1936.  There followed, over the ensuing decades, a series of revisionary decrees, reorganizations and re-namings, culminating in the entity known as Federal State Unitary Enterprise Creative and Production Studio "Soyuzmultfilm," which was established by decree of the president of the Russian Federation, Boris Yeltsin, in 1999.  That entity continued to make films under that name through the recent present.  The designated holder of the copyrights to the works licensed to LaRubInt in 2016 is stated to be "Federal State Unitary Enterprise Creative and Production Studio Soyuzmultfilm," and it is under that name that SMF entered into the contracts that are the subject of this lawsuit.

8.      In August 2021, the Federal State Unitary Enterprise designation appears to have been converted to a "Joint Stock Company," with all of the company shares now held by Russia's Federal Agency for State Property Management.  As a result, SMF today operates under the name "Joint Stock Company Studio Soyuzmultfilm," the name under which it is sued here. Under the terms of the parties' contracts, in the case of the reorganization of the copyright holder, its rights and obligations are transferred to the successor entity.

## JURISDICTION AND VENUE

9.      On information and belief, SMF is an instrumentality of the Russian Federation.  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1330(a) because an exception to any claim by SMF of sovereign immunity exists pursuant to 28 U.S.C. §§ 1605(a)(1) and (a)(2).  Specifically, SMF waived its immunity by consenting to the jurisdiction of New York courts and the application of New York law in its licensing agreements with LaRubInt (Ex. 1, Article 7.2); and SMF's acts in connection with a commercial activity caused a direct effect in the United States.

10.     If SMF is not an instrumentality of the Russian Federation, then the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is

diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of costs and interest.

11.     The Court has personal jurisdiction over SMF because it has engaged in conduct in this district giving rise to the claims in suit and has consented to the courts of New York, and to the application of New York law, for any disputes arising under the parties' contracts.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because plaintiff's principal place of business is in Brooklyn, New York, where the contracts in suit were entered into.

## FACTUAL BACKGROUND

13.     On August 18, 2016, LaRubInt and SMF entered into Contract No. 18/16, the first licensing agreement here in suit.  Under the terms of that agreement, SMF granted LaRubInt an exclusive license to use the characters of the animated series "Gena the Crocodile," "Cheburashka," "Shapoklyak," and "Cheburashka Goes to School" in the "entire territory of Asia including but not limited to . . . Japan, China (including Taiwan), Indonesia, South Korea, Thailand, Singapore and Malaysia."  (Ex. 1, Articles 1.1, 1.6.)

14.     On August 24, 2016, LaRubInt and SMF entered into an identical licensing agreement covering "the entire territory of Asia including but not limited to . . . India," Contract No. 23/16.  (Ex. 2, Articles 1.1, 1.6.)

15.     On August 30, 2016, LaRubInt and SMF entered into an identical licensing agreement covering "the entire territory of North America including but not limited to . . . USA and Canada," Contract No. 27/16.  (Ex. 3, Articles 1.1, 1.6.)

4

16.     The scope of the licensed uses in these markets was broad and wide-ranging.  LaRubInt was given license to use the characters appearing in the licensed films "in any form and any means" and in any type of goods, "both food and non-food, including any printed materials and souvenirs type of items, creation of any type of games including electronic games, producing any type of toys and rendering all types of services."  (Ex. 1, Article 1.2.)

17.     The forms these goods and products might take was without limitation, and could include all forms of advertising, marketing and promotion.  The range of possible designs using the licensed characters was likewise without limit and LaRubInt was under no obligation to obtain the consent of the copyright holder for any particular use or design.  (Ex. 1, Articles 1.2.1–1.2.4.)

18.     SMF further agreed that it would not be entitled to retain the right to use the characters within the territories licensed to LaRubInt and it explicitly agreed to relinquish any right to license the characters to any third parties.  LaRubInt, on the other hand, was given license to transfer its rights under the agreements, in whole or in part, to any third party.  (Ex. 1, Article 1.4.)

19.     The terms of these licenses were stated to be September 1, 2016 through August 31, 2021.  (Ex. 1, Article 1.5.)  In a Supplementary Agreement dated September 19, 2016, the parties extended the license term of Contract No. 18/16 to August 31, 2033.  (Ex. 4.)

20.     In exchange for these rights, LaRubInt agreed to make a guaranteed minimum payment of $20,000 following the signing of each of the license agreements, which it did on a timely basis.  In addition, LaRubInt agreed to pay annually to SMF a 25% royalty on LaRubInt's revenues, net of expenses, from the sale or use of the licensed characters.  (Ex. 1, Articles 3.1–3.3.)

21. SMF specifically represented and warranted to LaRubInt that the licensed rights were "free of any obligations to third parties and not burdened by them" and that there were, and would continue to be, "no contracts, agreements, licenses, permits, obligations, etc. concluded by the Copyright Holder preventing [LaRubInt] and/or its authorized representatives [from using] the characters" in accordance with the parties' agreement.  (Ex. 1, Article 4.2.)

22. In the event of a breach or violation of the license agreements by SMF, LaRubInt is entitled to recover a $10,000 penalty for each violation, as well as its "loss of profits along with other losses" caused by such violation.  (Ex. 1, Article 5.)

23. LaRubInt first learned of the competing Japanese licensee—a company calling itself "Cheburashka Project LLP" ("CP-LLP")—in October 2016.  According to court records produced in the Tokyo lawsuit, SMF (under its earlier identity as a Federal State Unitary Enterprise) had granted an exclusive license to a CP-LLP affiliate in 2005.  The licensed properties were the same suite of characters from the same four SMF animated series that were licensed to LaRubInt in 2016.  The license, which CP-LLP asserts to still be in force, covered all countries and regions of the world, excepting only the countries that were part of the former Soviet Union.

24. In light of this clear conflict, and the head start in marketing and sales exploited by the CP-LLP affiliate, LaRubInt found itself completely shut out of the markets it had secured on an "exclusive" basis under its 2016 agreements.  Of particular concern was the Japanese market—likely among the most lucrative of the sales territories—where the character Cheburashka had become a cultural phenomenon in the 2000s.  All attempts to resolve the conflict commercially with SMF and CP-LLP failed.  LaRubInt had no choice but to commence litigation to protect its rights under the contracts.

25.     In June 2017, LaRubInt filed a lawsuit against CP-LLP and its Japanese executives and affiliates in the Tokyo District Court asserting a breach of Contract No. 18/16.  A year or two into the case, after a number of setbacks for the defense, CP-LLP took the surprising position that SMF had acknowledged the validity of the CP-LLP license and its continuing effect, and had effectively disavowed the LaRubInt contract.  The evidence for this was scant and of questionable provenance.  In accordance with its rights under its own license agreements, LaRubInt made a formal demand on SMF that it provide an official letter confirming that the exclusive rights to the Cheburashka characters in Asia had been transferred to LaRubInt in the August 2016 contract.  Failure to do so would be a direct violation of SMF's representations and warranties under its contracts with LaRubInt.

26.     LaRubInt's demand to SMF went unanswered.  Without that critical evidence, LaRubInt's case against CP-LLP was doomed to fail.  On June 25, 2020, the Tokyo court issued a decision refusing LaRubInt's claim, largely on the basis of SMF's failure to acknowledge the LaRubInt contract, or to protect and enforce the rights conferred under that license against CP-LLP.

## COUNT 1 – BREACH OF CONTRACT

27.     By reason of the foregoing, SMF has breached its contractual agreements with LaRubInt, for which it must answer in damages in excess of $75,000, the exact amount to be determined at trial.

## COUNT 2 – UNJUST ENRICHMENT

28.     By reason of the foregoing, SMF has been unjustly enriched, to the detriment of LaRubInt, by taking and applying for its own benefit the rights it had promised to LaRubInt as a licensee.  LaRubInt is therefore entitled to recover from SMF an amount in excess of $75,000, the exact amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff LaRubInt respectfully requests that this Court:

(1)  enter judgment in plaintiff's favor and award it damages in an amount to be

     determined at trial;

(2)  award plaintiff its costs of suit, including reasonable attorneys' fees and

     expenses; and

(3)  award such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury of all issues so triable.


New York, New York
July 28, 2022

                  Respectfully submitted,

                  CURTIS, MALLET-PREVOST,
                    COLT & MOSLE LLP


                  By:  */s/ Turner P. Smith*
                  Turner P. Smith (TS 8052)
                  Nathaniel Ament-Stone
                  101 Park Avenue
                  New York, New York 10178
                  (212) 696-6000
                  tsmith@curtis.com
                  nament-stone@curtis.com

                  *Attorneys for Plaintiff*
                  *LaRubInt Corp.*

# **<u>EXHIBIT 1</u>**

| ДОГОВОР № 18/16 | CONTRACT № 18/16 |
|---|---|

г.Москва                     «18»августа  2016 г.

Федеральное государственное унитарное предприятие «Творческо-производственное объединение «Киностудия «Союзмультфильм», именуемое в дальнейшем «Правообладатель», в лице и.о.директора Давыдов Г.Б., действующего на основании Устава, с одной стороны, и

LaRubInt Corp.- американская компания, зарегистрированная по адресу 9281 Shore Rd. Ste. 204 Brooklyn NY 11209 USA, (именуемое в дальнейшем «Компания»), в лице President of LaRubInt Corp Ляли Рубштейн, с другой стороны, (далее также совместно именуемые «Стороны», а по отдельности – «Сторона»), заключили настоящий Договор о нижеследующем:

## 1.ПРЕДМЕТ ДОГОВОРА

1.1. Правообладатель предоставляет Компании исключительную лицензию на использование частей мультипликационных фильмов Киностудии «Союзмультфильм» «Крокодил Гена»(1969г.), «Чебурашка»(1971г.), «Шапокляк»(1974г.), «Чебурашка идёт в школу»(1983г.) (далее – «Фильмы»), а именно: зафиксированных в визуальном ряде Фильмов персонажей, представляющих собой динамические кукольные образы героев (Чебурашка, крокодил Гена, Шапокляк) и других действующих лиц Фильмов (далее – «Персонажи»), в порядке и на условиях настоящего Договора, а Компания обязуется выплачивать Правообладателю предусмотренное настоящим Договором вознаграждение.

1.2. Полученная лицензия дает Компании право на многоразовое (количественно неограниченное) использование Персонажей Фильмов (включая раздельное использование звукового и/или визуального компонентов Персонажей) отдельно (независимо) от Фильмов в любой форме и любыми способами, в т.ч. для изготовления (производства) любых видов товаров как продовольственных, так и непровольственных, включая любую печатную и **сувенирную** продукцию, создания настольных и/или электронных игр, **создание любых видов игрушек** и оказания любых видов услуг, (далее вместе именуемые – «Товары»), включая следующие способы:

1.2.1. Воспроизводить Персонажи Фильмов без ограничения тиража в виде Товаров (в т.ч. услуг) и/или на Товарах (в т.ч. их отдельных составляющих) и/или на их упаковках и/или любых рекламных материалах Товаров в любых необходимых для этого материальных формах (в т.ч. пространственно-объемной и печатной)

Moscow, Russian Federation            August 18, 2016

Federal State Unitary Enterprise "Creative and Production studio "Soyuzmultfilm", hereinafter referred to as "the Copyright Holder" (IP Owner), represented by Acting Director Davydov G.B., acting under the Charter, on the one part, and

LaRubInt Corp., an American company registered at the following address: 9281 Shore Rd. Ste. 204 Brooklyn NY 11209 USA (hereinafter referred to as "the Company"), represented by the President of LaRubInt Corp. Laila Rubstein, on the other part (hereinafter collectively referred to as "the Parties" and individually referred to as "the Party"), have concluded the present Contract as follows:

## 1. SUBJECT OF THE CONTRACT

1.1. The Copyright Holder provides the Company the exclusive license to use the characters of the following animated series of the Film studio "Soyuzmultfilm": " Gena the Crocodile" (1969), "Cheburashka" (1971), "Shapoklyak" (1974), "Cheburashka goes to school" (1983) (hereinafter referred to as "the Animated Films), described as following: characters recorded in the visual imagery of the Animated Films that represent the dynamic puppet images of the characters (Cheburashka, Gena the Crocodile, Shapoklyak), as well as other cast of characters featuring in the Animated Films (hereinafter referred to as "the Characters"), in the order and on the terms described hereby, and the Company shall pay the agreed remuneration fees (amounts) hereunder to the Copyright Holder.

1.2. The current(given) license entitles the Company the multiple (unlimited quantity) use of the Characters featuring in the Animated Films (including the separate use of audio and/or visual components of the Characters) separately (independently) from the Animated Films in any form and any means not limited for manufacturing (producing) any types of the goods, both food and non-food, including any printed materials and souvenirs type of items, creation of any type of gams including electronic games, producing any type of toys, and rendering of all types of services (hereinafter collectively referred to as "the Goods") including in the following manner:

1.2.1. To reproduce the Characters featuring in the Animated Films without limitation of the circulation in the form of the Goods (including services) and/or on the Goods (including their individual components) and/or on their packaging and/or any

1

и при помощи любых необходимых для этого средств. Дизайн Товаров, а также варианты использования Персонажей в виде Товаров (в т.ч. услуг) и/или на Товарах (в т.ч. их отдельных составляющих) и/или на их упаковках и/или любых рекламных материалах Товаров Компания определяет самостоятельно, без согласования с Правообладателем.

1.2.2. Распространять Персонажи, воспроизведенные в соответствии с п.1.2.1. настоящего Договора, в виде Товаров (в т.ч. услуг) и/или на Товарах (в т.ч. их отдельных составляющих) и/или на их упаковках и/или любых рекламных материалах Товаров путем продажи или иного отчуждения Товаров и/или оказания услуг и/или посредством любого использования их упаковок и/или любых рекламных материалов и/или иным любым возможным способом.

1.2.3. Импортировать и/или экспортировать экземпляры Персонажей в виде Товаров (в т.ч. услуг) и/или на Товарах (в т.ч. их отдельных составляющих) и/или на их упаковках и/или любых рекламных материалов Товаров, изготовленных в соответствии с п.1.2.1. настоящего Договора, в целях распространения Товаров (в т.ч. оказания услуг) и/или распространения их упаковок и/или рекламных материалов и/или в иных целях.

1.2.4. Переводить реплики Персонажей на любые языки народов мира, а также иным образом перерабатывать Персонажи (или их части) в целях реализации полученных по настоящему Договору прав и использовать Персонажи в переработанном виде указанными выше способами без согласования с Правообладателем.

Предусмотренная настоящим пунктом переработка включает в т.ч. право Компании перерабатывать Персонажи путем использования элементов их одежды и/или экипировки, позволяющих изобразить Персонаж в обстановке, отличной от сюжета соответствующего Фильма, а также право Компании изменять и/или заменять звуковой ряд соответствующего Персонажа (в том числе на аудиозаписи, созданные Компанией самостоятельно либо с привлечением третьих лиц), соблюдая личные неимущественные права лиц, принявших участие в создании Фильмов.

1.3. Эталонные изображения Персонажей передаются Правообладателем Компании по соответствующему Акту.

1.4. За Правообладателем не сохраняется право на использование Персонажей предусмотренными настоящей исключительной лицензией способами, а также право на выдачу соответствующих лицензий и/или прав и/или разрешений (в т.ч. на неисключительной основе) третьим лицам.

1.5. Лицензия на использование Персонажей по настоящему Договору предоставлена Компании на срок с «01» сентября 2016 года (Первое сентября две

promotional/marketing/advertising materials of the Goods in any material form required (including spatial-volumetric and printed), with the use of any appropriate means. Design of the Goods, as well as variants of using the Characters in the form of the Goods (including services) and/or on the Goods (including their individual components) and/or on their packaging and/or any promotional materials of the Goods shall be determined by the Company independently without the consent of the Copyright Holder.

1.2.2. To distribute the Characters reproduced in accordance with paragraph 1.2.1. hereof in the form of the Goods (including services) and/or on the Goods (including their individual components) and/or on their packaging and/or any promotional/marketing/advertising materials of the Goods by sale or any other means of the Goods and/or rendering of services and/or by any use of their packaging and/or any promotional/marketing/advertising materials and/or in any other way possible.

1.2.3. To import and/or export items of the Characters in the form of the Goods (including services) and/or on the Goods (including their individual components) and/or on their packaging and/or any promotional/marketing/advertising materials of the Goods manufactured in accordance with paragraph 1.2.1. hereof for the purpose of distributing the Goods (including rendering of services) and/or distributing their packaging and/or promotional/marketing/advertising materials and/or for other purposes.

1.2.4. To translate the dialogues of the Characters into any languages worldwide, as well as otherwise modify the Characters (or their parts) in order to exercise the rights obtained hereunder and to use the Characters in a modified form in the above manner without the consent of the Copyright Holder.

Modifications described under the present paragraph includes the Company's right to modify the Characters by using their elements of clothing and/or accessories, which give the possibility to portray the Character in a setting different from the plot of the respective Animated Film, as well as the Company's right to modify and/or replace the sound of the respective Character (including on the audio recording created by the Company independently or with the involvement of third parties), respecting the personal non-proprietary rights of the authors involved in creating the Animated Films.

1.3. Referenced images of the Characters shall be transferred by the Copyright Holder to the Company under the relevant Act of Acceptance.

1.4. The Copyright Holder shall not be entitled to retain the right to use the Characters in the ways described by the present exclusive license, as well as to retain the right to issue the relevant licenses and/or

2

тысячи шестнадцатого года) по 31 августа 2021 года (Тридцать первое августа две тысячи двадцать первого года) включительно.

1.6. Полученная от Правообладателя по настоящему Договору лицензия распространяет своё действие на территорию всей Азии включая но не ограничиваясь территорией следующих стран: Япония, Китай (включая Тайвань), Индонезия, Южная Корея, Тайланд, Сингапур и Малазия.

1.7. Компания имеет право по своему усмотрению передавать (сублицензировать) полученные по настоящему Договору права использования Персонажей (а также права, указанные в п.1.8 и п.1.9 настоящего Договора) как в полном объеме, так и по частям любым третьим лицам.

1.8. Кроме того, Правообладатель предоставляет Компании на неисключительной основе права (неисключительную (простую) лицензию) и дает соответствующее разрешение на многоразовое использование имен собственных (названий) Персонажей, в рекламных материалах соответствующих Товаров (в т.ч. услуг), прайс-листах и другой документации, применяемой в процессе производства и/или реализации соответствующих Товаров (в т.ч. услуг), а также в качестве названий ассортиментных позиций соответствующих Товаров (в т.ч. услуг) и любым другим возможным способом без выплаты Правообладателю какого-либо дополнительного вознаграждения в течение в период всего срока действия исключительной лицензии, указанного в п.1.5 настоящего Договора, на территории, указанной в п.1.6. Договора.

Указанное выше право (лицензию) Компания может осуществлять как самостоятельно, так и путем передачи третьим лицам

1.9. Правообладатель предоставляет Компании на неисключительной основе права (неисключительную (простую) лицензию) и даёт соответствующее разрешение на многоразовое использование в целях индивидуализации производимых в рамках настоящего Договора Товаров и/или их упаковки и/или рекламных материалов, предусмотренных данным договором и без выплаты Правообладателю какого-либо вознаграждения в период всего срока действия исключительной лицензии, указанного в п.1.5 настоящего Договора, на территории, указанной в п.1.6. Договора, фирменного логотипа производителя Фильмов – Киностудии «Союзмультфильм» (фирменного написания «СОЮЗМУЛЬТФИЛЬМ»), в т.ч. путём его размещения на Товарах (включая этикетки и упаковки) и в рекламе Товаров способами предусмотренными данным Договором. Предоставление Компании вышеуказанных прав (лицензии) на использование логотипа ни при каких условиях не препятствует и не будет препятствовать использованию этого логотипа Правообладателем и уполномоченными им лицами любыми возможными

rights and/or permissions (including on a non-exclusive basis) to third parties.

1.5. The license to use the Characters hereunder is provided to the Company for the period from September 01, 2016 (the first of September of two thousand and sixteen) through August 31, 2021 (the thirty first of August of two thousand and twenty first).

1.6. The license obtained from the Copyright Holder hereunder is extended to cover the entire territory of Asia including but not limited to territories of following countries: Japan, China (including Taiwan), Indonesia, South Korea, Thailand, Singapore and Malaysia.

1.7. The Company is entitled to transfer (sublicense) at its own discretion the rights obtained hereunder to use the Characters (as well as the rights specified in paragraphs 1.8 and 1.9 hereof) either in full, or in part to any third party.

1.8. In addition, the Copyright Holder provides the Company with the rights on a non-exclusive basis (non-exclusive (ordinary) license) and gives the relevant permission for repeated use of proper names (names) of the Characters in the promotional/marketing/advertising materials of the relevant Goods (including services), price lists and other documentation involved in the production process and/or sale of the relevant Goods (including services), as well as the names of items of the relevant Goods (including services) and in any other possible way without paying any additional compensation to the Copyright Holder during the period of the entire term of the exclusive license specified in paragraph 1.5 hereof on the territory specified in paragraph 1.6. hereof.

The Company shall be entitled to exercise the above right (license) both independently and through any third party.

1.9. In order to customize the Goods produced hereunder and/or packaging and/or promotional/marketing/advertising materials provided for herein, without paying any fees to the Copyright Holder for the entire term of the exclusive license specified in paragraph 1.5 hereof on the territory specified in paragraph 1.6. hereof, the Copyright Holder shall provide the Company with the rights on a non-exclusive basis (non-exclusive (ordinary) license) and gives the relevant permission for repeated use of the corporate logo owned by the manufacturer of the Animated Films – the Film studio "Soyuzmultfilm" (corporate writing: "SOYUZMULTFILM"), including by placing it on the Goods (including labels and packaging) and when advertising the Goods by ways described hereby. Granting the above rights (license) for using the logo to the Company under no circumstances shall prevent and will prevent the use of this logo by the Copyright Holder and its authorized representatives in any way and in any form.

3

способами и в любой форме.

## 2. ПРАВА И ОБЯЗАННОСТИ СТОРОН

2.1. В целях исполнения настоящего Договора Правообладатель обязуется:

2.1.1. На период действия указанных в п.1.1., п.1.2. настоящего Договора исключительных прав (исключительной лицензии) Компании на Персонажи на территории, предусмотренной п.1.6. настоящего Договора, не передавать третьим лицам (как полностью, так и по частям)(в т.ч. не выдавать лицензий), а также самостоятельно не использовать права на Персонажи ( в т.ч. их части, фрагменты и пр.) любым из способов, предусмотренным п.1.2. настоящего Договора (включая п.п.1.2.1.-1.2.4. настоящего Договора).

2.1.2. По письменному запросу Компании или уполномоченных лиц предоставить им копии имеющихся у Правообладателя документов по производству Фильмов, необходимых для защиты и реализации полученных по настоящему Договору прав на Персонажи.

2.1.3. Не препятствовать Компании и/или уполномоченным лицам в осуществлении полученных по настоящему Договору прав.

2.2. В целях исполнения настоящего Договора Компания обязуется:

2.2.1. Своевременно и в полном объеме выплачивать Правообладателю суммы вознаграждения, предусмотренные ст.3 настоящего Договора.

2.2.2. Обеспечить надлежащее качество Товаров/услуг и их полное соответствие всем предъявляемым требованиям и стандартам.

2.2.3. При использовании Персонажей соблюдать указанные в ст.1 настоящего Договора сроки, способы и территорию их использования.

2.2.4. Привлекать для производства Товаров (оказания услуг) и/или их упаковок и/или рекламных материалов любых других лиц. Компания вправе самостоятельно определять количество использований Персонажей и по собственному усмотрению устанавливать объемы необходимых партий, тиражей и/или количество экземпляров, в т.ч. устанавливать по собственному усмотрению максимальное количество использований объектов интеллектуальных прав для сублицензиатов, если сочтет это необходимым.

2.2.5. Самостоятельно и за свой счет нести все расходы, связанные с реализацией полученных по настоящему Договору прав, если настоящим Договором прямо не предусмотрено иное.

2.2.6. Ежегодно, в течение 20 рабочих дней, следующих за отчётным годом, предоставлять Правообладателю Отчёт по использованию

## 2. RIGHTS AND OBLIGATIONS OF THE PARTIES

2.1. For the purposes hereof, the Copyright Holder shall:

2.1.1. Pursuant to the Act of Acceptance, within ten days from the date of signing by the Parties hereof, the Copyright Holder shall provide the Company with the Patterns of the Characters available to the Copyright Holder. The Patterns represent the original visual image of the Characters and include the following elements: graphical model of the Character (vector image), color layout of the Character in the Pantone and CMYK palette, as well as a copy of the logo of the manufacturer of the Animated Films on electronic media.

2.1.2. For the period of validity of exclusive rights (exclusive license) of the Company specified in paragraphs 1.1 and 1.2. hereof with regards to the Characters on the territory referred to in paragraph 1.6. hereof, the Copyright Holder shall not transfer the rights related (pertained) to the Characters (including their parts, fragments, etc.) to third parties (in whole or in part) (including prohibition to issue licenses), as well as shall not use the rights related (pertained) to the Characters by itself in any of the ways prescribed under paragraph 1.2. hereof (including paragraphs 1.2.1.-1.2.4. hereof).

2.1.3. Upon written request of the Company or its authorized representatives, the Copyright Holder shall provide them with the copies of documents of (related to) the production of the Animated Films necessary for the protection and exercise of the rights related to the Characters obtained hereunder.

2.1.4. The Copyright Holder shall not prevent the Company and/or authorized representatives from implementing the rights obtained hereunder.

2.2. For the purposes of executing the present Contract, the Company shall:

2.2.1. The Company shall in timely manner and in full pay the amount of the fees stipulated in paragraph 3 hereof to the Copyright Holder.

2.2.2. The Company shall ensure the proper quality of the Goods/services and their full compliance with all requirements and standards.

2.2.3. When using the Characters, the Company shall comply with the terms, methods and territory of their use stated in paragraph 1 hereof.

2.2.4. The Company shall attract any other entities or professionals for the production of the Goods (services) and/or their packaging and/or promotional/marketing/advertising materials. The Company shall be entitled to determine the number of the Characters' use and to set the volume of necessary batches, copies and/or number of instances at its sole

4

полученных по настоящему Договору прав с указанием поступлений и расходов Компании за отчётных год, а также начисления сумм платежей роялти.

2.3.. Компания и/или уполномоченные лица имеют право пресекать использование Персонажей третьими лицами, нарушающее полученные Компанией по настоящему Договору исключительные права (исключительные лицензии), в т.ч. путем обращения в судебные органы. При этом все судебные расходы несёт Компания. Такие расходы считаются расходами Компании по использованию полученных по настоящему Договору прав и учитываются как затраты при расчёте сумм платежей роялти по настоящему Договору.

### 3. ВОЗНАГРАЖДЕНИЕ ПО ДОГОВОРУ

3.1. Вознаграждение Правообладателю за предоставление Лицензий по настоящему Договору состоит из суммы гарантированного минимума в размере 20000 (двадцать тысяч) долларов США и платежей роялти.

3.2. Сумма гарантированного минимума выплачивается Компанией в следующем порядке;

3.2.1. Вся сумма в размере 20000 (двадцать тысяч) долларов США выплачивается в течение десяти дней с даты подписания Сторонами настоящего Договора;

3.2.2. Сумма гарантированного минимума, полученная Правообладателем по настоящему Договору, относится к расходам Компании, учитываемым при начислении платежей роялти по настоящему Договору.

3.3. Платежи роялти начисляются Компанией в размере 25% (Двадцать пять процентов) от дохода Компании.

Доходом Компании считаются все суммы, полученные Компанией от реализации Товаров или от предоставления сублицензий по настоящему Договору третьим лицам, уменьшенные на расходы Компании по использованию полученных по настоящему Договору прав (в т.ч. расходы на рекламу Товаров, получение необходимых разрешений,все судебные расходы, указанные в п.2.3 настоящего Договора, а

discretion. At its own discretion, the Company shall also be entitled to set the maximum number of uses with regards to intellectual property rights for sublicensees, as it deems necessary.

2.2.5. The Company shall independently and at its own expense be responsible for all costs associated with the implementation of the rights obtained hereunder, unless the present Contract expressly provides otherwise.

2.2.6. Annually, within 20 business days following the reporting year, the Company shall provide the Copyright Holder with the Report about the procedure of using the rights received hereunder with an indication of income and expenditures of the Company for the reporting year, as well as the accrual of royalty payments.

2.3. The Company and/or authorized representatives shall be entitled to prevent the use of the Characters by third parties violating exclusive rights (exclusive license) received by the Company hereunder, including through pursuing litigation in the judicial authorities. In this case, all legal costs and expenses shall be incurred by the Company. Such expenses shall be considered as expenses of the Company for the use of the rights obtained hereunder and shall be recognized as costs when calculating the amounts of the royalty payments hereunder.

### 3. PAYMENT PROCEDURE

3.1. Fees to the Copyright Holder for granting the Licenses hereunder consists of the guaranteed minimum in the amount of USD 20,000 (twenty thousand) and royalty payments.

3.2. The amount of the guaranteed minimum shall be paid by the Company according to the following procedure:

3.2.1. The whole amount of USD 20,000 (twenty thousand) shall be paid within ten days from the date of signing by the Parties hereof;

3.2.2. The amount of the guaranteed minimum received by the Copyright Holder hereunder shall be related to the Company's expenses recognized when calculating royalty payments hereunder.

3.3. Royalty payments shall be accrued by the Company in the amount of 25% (twenty five percent) of the Company's revenue.

The Company's revenues shall be considered as all amounts received by the Company from the sale of the Goods or from granting sublicenses hereunder to third parties, reduced by the expenses of the Company for using the rights obtained hereunder (including advertising costs of the Goods, obtaining the required permits, all legal costs and expenses referred to in paragraph 2.3 hereof, as well as the guaranteed minimum paid hereunder).

также выплаченный по настоящему договору гарантированный минимум).

3.4. Сумма начисленных платежей роялти отражается в ежегодных Отчётах Компании. Выплаты производятся Компанией в течение месяца после представления Правообладателю соответствующего Отчёта на расчётный счёт, указанный в Реквизитах Правообладателя в настоящем Договоре.

3.5. Никаких других отчислений и платежей за использование полученных по Договору прав использования Компания и/или уполномоченные ею лица Правообладателю не производят и производить не будут.

3.6. Датой оплаты считается поступление средств на расчетный счет Правообладателя. Уплата налогов и иных обязательных платежей осуществляется каждой Стороной самостоятельно.

## 4. ГАРАНТИИ СТОРОН

4.1. Заключая настоящий Договор, Стороны заявляют и гарантируют, что они имеют все права и полномочия, необходимые для заключения и надлежащего исполнения настоящего Договора, не имеют по этому поводу исков и/или претензий со стороны третьих лиц и урегулируют их самостоятельно и за свой счет в случае возникновения в будущем.

4.2. Правообладатель гарантирует, что он является законным обладателем авторских прав, передаваемых Компании по настоящему Договору, что данные права свободны от каких-либо обязательств перед третьими лицами и не обременены ими и что не существует в настоящее время и не будет существовать каких-либо заключенных Правообладателем договоров, соглашений, лицензий, разрешений, обязательств и т.д., препятствующих Компании и/или уполномоченным ею лицам использовать Персонажи в соответствии с настоящим Договором.

Правообладатель гарантирует, что никакие иные объекты прав, предоставленные по настоящему Договору, не нарушают чьих-либо законных прав и интересов, как-то: авторских и/или смежных прав, патентных прав, прав на торговую марку и/или товарный знак, прав собственности и т.п., а также не наносят ущерба чьим-либо чести и достоинству, деловой репутации.

4.3. Компания гарантирует, что при использовании Произведений не будет нарушать сроков, способов и территории использования, предусмотренных ст.1 настоящего Договора.

## 5. ОТВЕТСТВЕННОСТЬ СТОРОН

5.1. Сторона, не исполнившая или ненадлежащим образом исполнившая обязательства по настоящему

3.4. The amount of royalty payments accrued shall be reflected in the annual Reports of the Company. Payments shall be made by the Company within one month after submission to the Copyright Holder of the Report to the settlement account specified in the Bank Details of the Copyright Holder herein.

3.5. No other royalties and payments for the use of the rights hereunder shall be made or will be made by the Company and/or its authorized representatives to the Copyright Holder.

3.6. The date of payment shall be the date of receipt of the funds to the settlement account of the Copyright Holder. Payment of taxes and other mandatory payments shall be carried out by each Party independently.

## 4. REPRESENTATIONS AND WARRANTIES OF THE PARTIES

4.1. By entering into the present Contract, the Parties represent and warrant that they possess all the rights and powers necessary for the conclusion and proper execution hereof, do not have any complaints and/or claims from third parties for this reason and will resolve any possible disputes on their own and at their own expense.

4.2. The Copyright Holder guarantees that it is the legitimate copyright holder provided to the Company hereunder, that these rights are free of any obligations to third parties and not burdened by them, and that there are or will be no contracts, agreements, licenses, permits, obligations, etc. concluded by the Copyright Holder preventing the Company and/or its authorized representatives to use the Characters in accordance herewith.

The Copyright Holder guarantees that no other objects of titles granted hereunder do not violate anyone's legitimate rights and interests, such as copyright and/or related rights, patent rights, trademark rights and/or brand name rights, property rights, etc., and not prejudice anyone's honor and dignity, or business reputation.

4.3. The Company guarantees that it will not violate the terms, methods and territory intended for use of the Animated Films or the Characters, as stipulated in paragraph 1 hereof.

## 5. LIABILITY OF THE PARTIES

5.1. The Party failing to perform or improperly performed its obligations hereunder shall compensate

6

Договору, обязана возместить другой стороне причиненные этим убытки при условии их документального подтверждения. Если сторона, нарушившая настоящий Договор, получила вследствие этого доходы, сторона, права которой нарушены, вправе требовать возмещения наряду с другими убытками упущенной выгоды в размере не меньшем, чем такие доходы.

5.2. В каждом случае нарушения Компанией хотя бы одного из обязательств, предусмотренных любым из п.п. 2.2.3, 4.3 настоящего Договора Компания выплачивает Правообладателю штраф в размере 10 000 (Десять тысяч) долларов США в отношении каждого из Персонажей, а также полностью возмещает причиненные Правообладателю убытки.

5.3. В случае невыполнения и/или ненадлежащего выполнения Компанией предусмотренных настоящим Договором обязательств по выплате вознаграждения Компания выплачивает Правообладателю штраф в размере 0,1 % от суммы платежа за каждый день просрочки.

5.4. В каждом случае нарушения Правообладателем любого из своих обязательств, оговоренных в п. 2.1.2 настоящего Договора, Правообладатель обязан уплатить Компании или уполномоченным лицам, права которых будут нарушены (по выбору Компании), штраф в размере 10 000 (Десять тысяч) долларов США за каждый Персонаж, в отношении которого допущено такое нарушение, а также возместить Компании и уполномоченным лицам все документально подтвержденные убытки (включая упущенную выгоду), причиненные в результате этого нарушения.

5.5. В случае, если вступившим в законную силу решением суда соответствующей юрисдикции будет установлено отсутствие у Правообладателя исключительного права на использование Персонажа способами, предусмотренными п.1.2. настоящего Договора, и/или иных прав, переданных Компании по настоящему Договору, Компания имеет право в одностороннем порядке отказаться от исполнения настоящего Договора в отношении этого Персонажа и/или иного объекта или от исполнения настоящего Договора в целом и расторгнуть настоящий Договор в одностороннем порядке путем направления Правообладателю соответствующего письменного уведомления в части, касающейся данного Персонажа и/или соответствующего объекта или полностью без выплаты Правообладателю каких-либо неустоек, компенсаций, возмещения убытков и пр., а также взыскать причиненные таким расторжением убытки (включая упущенную выгоду) и выплаченное Правообладателю вознаграждение.

# 6. КОНФИДЕНЦИАЛЬНОСТЬ

6.1. Финансовые условия настоящего Договора, а также вся производственная, финансовая,

the other Party for the damages incurred, provided the documentary confirmation of such damages. If the Party, which has violated the terms hereof, received any income as a result of such violation, the damaged Party which rights were violated shall be entitled to demand compensation related to the loss of profits along with other losses in the amount not smaller than such incomes.

5.2. In each case of violation by the Company of at least one of its obligations under paragraphs 2.2.3 or 4.3 hereof, the Company shall pay a penalty to the Copyright Holder in the amount of USD 10,000 (ten thousand) in respect of each Character, as well as shall fully reimburse the damages incurred by the Copyright Holder.

5.3. In case of failure to fulfill and/or improper fulfillment by the Company hereunder of its obligations to pay fees, the Company shall pay a penalty to the Copyright Holder in the amount of 0.1% of the amount of payment for each day of delay.

5.4. In each case of a violation by the Copyright Holder of any of its obligations stipulated in paragraph 2.1.2 hereof, the Copyright Holder shall pay a penalty to the Company or the authorized representatives whose rights are violated (at the Company's choice) in the amount of USD 10,000 (ten thousand) for each Character in respect of which such violation was in place. In addition, the Copyright Holder shall reimburse the Company and its authorized representatives for all documented losses (including loss of profits) caused as a result of such violation.

5.5. In case it will be established in accordance with an enforceable decision of the court of the relevant jurisdiction that the Copyright Holder has no exclusive right to use the Character by the ways specified in paragraph 1.2. hereof, and/or other rights transferred to the Company hereunder, the Company shall be entitled to unilaterally withdraw from execution hereof in respect of such Character and/or other object or from execution hereof as a whole and to terminate the present Contract unilaterally by submitting a written notification to the Copyright Holder in respect of such Character and/or the respective object, or to terminate the present Contract in full without payment to the Copyright Holder of any penalties, compensations, damages etc., as well as to recover losses or damages caused by such termination (including loss of profits) and the amount of fees paid to the Copyright Holder.

# 6. CONFIDENTIALITY

6.1. The financial terms hereof, as well as all production, financial, commercial and other information

коммерческая и иная информация, предоставляемая Сторонами друг другу в процессе исполнения настоящего Договора, являются конфиденциальной информацией. Стороны примут все меры, чтобы предохранить конфиденциальную информацию от разглашения. Передача конфиденциальной информации третьим лицам (за исключением приглашенных сторонами адвокатов, аудиторов, консультантов), опубликование и иное разглашение возможно лишь с письменного разрешения Стороны, ее предоставившей, а также в случаях, предусмотренных законодательством.

## 7. РАЗРЕШЕНИЕ СПОРОВ

7.1. Все споры и разногласия, которые могут возникнуть между сторонами по вопросам, не нашедшим своего разрешения в тексте настоящего Договора, а также по вопросы, прямо неурегулированные настоящим Договором, будут разрешаться путем направления претензий. Срок ответа на претензию – 20 (двадцать дней) с момента получения.

7.2. В случае отсутствия ответа и/или недостижения согласия по спорным вопросам в течение указанного срока, споры передаются на рассмотрение арбитражного суда г.Нью-Йорка (США). и разрешаются на основе норм права штата Нью-Йорк.

## 8. СРОК ДЕЙСТВИЯ ДОГОВОРА

8.1. Настоящий договор признается заключенным и вступает в силу с даты его подписания Сторонами, указанной на первой странице настоящего Договора, и действует по «31» августа 2021 года.

8.2. Финансовые обязательства Сторон, а также обязанности Компании по предоставлению Отчётов остаются в силе до их надлежащего исполнения.

8.3. В течение семи месяцев с момента окончания срока действия настоящего договора, а также в течение трёх месяцев в случае расторжения настоящего Договора по соглашению Сторон или из-за нарушения Компанией условий договора, Компания, после подписания Сторонами соответствующего соглашения, будет иметь неисключительное право распространения остатков Продукции, изготовленной Компанией в соответствии с настоящим Договором, с обязательными выплатами роялти, согласно условиям настоящего Договора. В соглашении Стороны установят количество остатков Продукции и сроки платежей роялти за неё.

## 9.ОБСТОЯТЕЛЬСТВА НЕПРЕОДОЛИМОЙ СИЛЫ

provided by the Parties to each other during the execution hereof shall be confidential. The Parties shall take all efforts to protect confidential information from disclosure. Submission of confidential information to third parties (with the exception of the lawyers, auditors or advisors invited by the Parties), making such information publicly available or other disclosure of such information shall be possible only with the written authorization of the respective Party, which provided such confidential information, as well as in cases stipulated by the applicable legislation.

## 7. DISPUTE RESOLUTION

7.1. All disputes and disagreements that may arise between the Parties on the issues that failed to be resolved in the text hereof, as well as on all issues directly not regulated hereby shall be resolved by submitting the respective claims. The response time to such claim shall be 20 (twenty) days from the date of its receipt.

7.2. In case of the absence of a response and/or failure to reach an agreement on a matter of issue within a specified period, disputes shall be referred to the arbitration court of New York (USA) and resolved based on the applicable legislation of the state of New York (USA).

## 8. TERM OF THE CONTRACT

8.1. The present Contract shall be deemed concluded and shall enter into force on the date of its signing by the Parties specified on the first page hereof, and shall be valid until August 31, 2021.

8.2. Financial obligations of the Parties, as well as the Company's obligations to provide the corresponding Reports shall remain in force until their proper execution.

8.3. Within seven months from the date of expiry hereof, as well as within three months in case of termination hereof by an agreement of the Parties or due to breach by the Company of the terms hereof, the Company shall be entitled after signing the relevant agreement by the Parties to have the non-exclusive right of distributing residual stock of the Goods manufactured by the Company in accordance herewith, with a mandatory royalty payments under the terms hereof. The Parties shall determine the amount of residual stock of the Goods and agree on the terms of royalty payments for such residual stock.

## 9. FORCE MAJEURE

9.1. Стороны освобождаются от ответственности за частичное или полное неисполнение обязательств по настоящему Договору, если оно явилось следствием обстоятельств непреодолимой силы, возникших после заключения настоящего Договора.

К таким обстоятельствам в контексте настоящего Договора относятся стихийные бедствия, военные действия, введение чрезвычайного положения, акты террора, массовые беспорядки, если такие обстоятельства непосредственно препятствуют исполнению Сторонами своих обязательств.

Факт наступления таких обстоятельств и их продолжительность должны быть подтверждены Торгово-промышленной палатой РФ или США и любой из стран Территории либо иным компетентным органом

9.2. Сторона, исполнению обязательств которой препятствуют вышеуказанные обстоятельства, обязана в письменной форме уведомить другую Сторону об этом в течение 10 (десяти) дней со дня их наступления. В противном случае Сторона, ссылающаяся на обстоятельства непреодолимой силы, освобождается от ответственности за неисполнение своих обязательств по настоящему Договору только с даты уведомления.

### 10. РАСТОРЖЕНИЕ ДОГОВОРА

10.1. Стороны вправе досрочно расторгнуть настоящий Договор по взаимному письменному соглашению.

### 11. ЗАКЛЮЧИТЕЛЬНЫЕ ПОЛОЖЕНИЯ

11.1. Любые изменения и дополнения к настоящему Договору имеют юридическую силу и являются неотъемлемой частью настоящего Договора, если они совершены в письменной форме и подписаны полномочными представителями обеих Сторон. Недействительность отдельных положений настоящего Договора не влечет недействительности прочих его частей.

11.2. В случае реорганизации Правообладателя его права и обязанности по настоящему Договору переходят к правопреемникам. В случае ликвидации Правообладателя Компания (в т.ч. уполномоченные лица) сохраняют в полном объеме все передаваемые Компании по настоящему Договору права и разрешения, включая имущественные (в т.ч. исключительные) права (лицензии).

11.3. С момента даты подписания настоящего Договора, указанной на первой странице настоящего Договора, все предшествующие документы и переписка между Сторонами по предмету Договора утрачивают силу.

9.1. The Parties shall be relieved from responsibility for partial or complete failure to fulfill obligations hereunder if it was caused by force majeure arising after the conclusion hereof.

Such circumstances in the context hereof include natural disasters, acts of war, state of emergency, acts of terrorism, riots, if such circumstances directly hamper the performance by the Parties of their obligations hereunder.

The fact of occurrence of such circumstances and their duration shall be confirmed by the Chamber of Commerce and Industry of the Russian Federation or the United States and any country on the Territory or other competent authority.

9.2. The Party, which is hampered to fulfill its obligation hereunder by the above circumstances, shall notify the other Party in writing within 10 (ten) days from the date of their occurrence. Otherwise, the Party, which refers to force majeure, shall be exempt from liability for failure to perform its obligations hereunder only from the date of notification.

### 10. TERMINATION OF THE CONTRACT

10.1. The Parties shall be entitled to terminate the present Contract by mutual written agreement.

### 11. FINAL PROVISIONS

11.1. Any changes or additions hereto shall be legally binding and shall be an integral part hereof if done in writing and signed by the authorized representatives of both Parties. Invalidity of individual provisions hereof shall not entail invalidity of its other provisions.

11.2. In case of reorganization of the Copyright Holder, its rights and obligations hereunder shall be transferred to the successors. In case of liquidation of the Copyright Holder, the Company (including its authorized representatives) shall retain in full all rights and permissions transferred to the Company hereunder, including property (including exclusive) rights (licenses).

11.3. From the date of signing hereof specified on the first page hereof, all prior documents and correspondence between the Parties on the subject matter hereof shall become void.

11.4. The present Contract is made in two copies in Russian and English, having equal legal force, one copy – for the Copyright Holder, and another copy – for the Company.

9

11.4. Настоящий Договор составлен в двух экземплярах на русском и английском языках, имеющих равную юридическую силу, из которых один экземпляр находится у Правообладателя, второй - у Компании.

11.5. Стороны обязаны уведомлять друг друга в трехдневный срок об изменении адресов, банковских реквизитов. В противном случае направление корреспонденции на прежний адрес считается надлежащим извещением соответствующей Стороны.

11.5. The Parties shall notify each other within three days on any change of their addresses or bank details. Otherwise, submission of correspondence to the previous address shall be considered as the proper notification of the Party concerned.

## 12. АДРЕСА И БАНКОВСКИЕ РЕКВИЗИТЫ СТОРОН

## 12. BANK DETAILS AND SIGNATURES OF THE PARTIES

### ПРАВООБЛАДАТЕЛЬ:

Федеральное государственное унитарное предприятие «Творческо-производственное объединение «Киностудия «**Союзмультфильм**»

Адрес местонахождения: 127006, г. Москва, ул. Долгоруковская, д.23а

Фактический адрес: 27006, г. Москва,ул. Долгоруковская, д.25

account # 40502978038050000093
SWIFT – код          SABRRUMM
Наименование банка SBERBANK
Город, страна          MOSCOW, RUSSIA
Банки-корреспонденты:
в долларах США
account# 40502840238001000022
SWIFT – код          BKTRUS33
Наименование банка    Deutsche Bank Trust Company Americas
Город, страна          New York, USA
Номер корр. Счета      04403077
Тел.:  8 (499) 978-43-69
E-mail: info@souzmult.ru

### THE COPYRIGHT HOLDER:

Federal State Unitary Enterprise "Creative and Production studio "**Soyuzmultfilm**",

Legal address: 23a Dolgorukovskaya str., 127006, Moscow
Actual address: 25 Dolgorukovskaya str., 127006, Moscow

account # 40502978038050000093
SWIFT –          SABRRUMM
Bank name        SBERBANK
City, Country     MOSCOW, RUSSIA
Correspondent bank:
Currency: USA Dollars
account# 40502840238001000022
SWIFT          BKTRUS33
Bank Name          Deutsche Bank Trust Company Americas
City, Country     New York, USA
Correspondent Account# 04403077
Tel.:  7 (499) 978-43-69
E-mail: info@souzmult.ru

**ДИРЕКТОР** _____ /Давыдов Г.Б./

/Stamp here/

**DIRECTOR** _____ /Davydov G.B./

/Stamp here/

### КОМПАНИЯ:

**LaRubInt Corp**
9281 Shore Rd. Ste. 204 Brooklyn NY 11209 USA
Laila Rubstein +1.646.435.1111
laila_rubstein@yahoo.com
WIRE CITIBANK
330 MADISON AVENUE NEW YORK NY 10017 USA LARUBINT, CORP. ABA# 021000089
ACCOUNT# 4998104273
SWIFT CITIUS33

### THE COMPANY:

**LaRubInt Corp**
9281 Shore Rd. Ste. 204 Brooklyn NY 11209 USA
Laila Rubstein +1.646.435.1111
laila_rubstein@yahoo.com
WIRE CITIBANK
330 MADISON AVENUE NEW YORK NY 10017 USA LARUBINT, CORP. ABA# 021000089
ACCOUNT# 4998104273
SWIFT CITIUS33

**ПРЕЗИДЕНТ** _____ /Ляля Рубштейн/

/Stamp here/

**PRESIDENT** _____ /Laila Rubstein/

/Stamp here/

10

# **EXHIBIT 2**

| ДОГОВОР № 23/16 | CONTRACT № 23/16 |
|---|---|

г.Москва «24»августа 2016 г.

Moscow, Russian Federation August 24, 2016

Федеральное государственное унитарное предприятие «Творческо-производственное объединение «Киностудия «Союзмультфильм», именуемое в дальнейшем «Правообладатель», в лице и.о.директора Давыдова Г.Б., действующего на основании Устава, с одной стороны, и

Federal State Unitary Enterprise "Creative and Production studio "Soyuzmultfilm", hereinafter referred to as "the Copyright Holder" (IP Owner), represented by Acting Director Davydov G.B., acting under the Charter, on the one part, and

LaRubInt Corp.- американская компания, зарегистрированная по адресу 9281 Shore Rd. Ste. 204 Brooklyn NY 11209 USA, (именуемое в дальнейшем «Компания»), в лице President of LaRubInt Corp Ляли Рубштейн, с другой стороны, (далее также совместно именуемые «Стороны», а по отдельности – «Сторона»), заключили настоящий Договор о нижеследующем:

LaRubInt Corp., an American company registered at the following address: 9281 Shore Rd. Ste. 204 Brooklyn NY 11209 USA (hereinafter referred to as "the Company"), represented by the President of LaRubInt Corp. Laila Rubstein, on the other part (hereinafter collectively referred to as "the Parties" and individually referred to as "the Party"), have concluded the present Contract as follows:

## 1.ПРЕДМЕТ ДОГОВОРА

## 1. SUBJECT OF THE CONTRACT

1.1. Правообладатель предоставляет Компании исключительную лицензию на использование частей мультипликационных фильмов Киностудии «Союзмультфильм» «Крокодил Гена»(1969г.), «Чебурашка»(1971г.), «Шапокляк»(1974г.), «Чебурашка идёт в школу»(1983г.) (далее – «Фильмы»), а именно: зафиксированных в визуальном ряде Фильмов персонажей, представляющих собой динамические кукольные образы героев (Чебурашка, крокодил Гена, Шапокляк) и других действующих лиц Фильмов (далее – «Персонажи»), в порядке и на условиях настоящего Договора, а Компания обязуется выплачивать Правообладателю предусмотренное настоящим Договором вознаграждение.

1.1. The Copyright Holder provides the Company the exclusive license to use the characters of the following animated series of the Film studio "Soyuzmultfilm": " Gena the Crocodile" (1969), "Cheburashka" (1971), "Shapoklyat" (1974), "Cheburashka goes to school" (1983) (hereinafter referred to as the "Animated Films"), described as following: characters recorded in the visual imagery of the Animated Films that represent the dynamic puppet images of the characters (Cheburashka, Gena the Crocodile, Shapoklyak), as well as other cast of characters featuring in the Animated Films (hereinafter referred to as "the Characters"), in the order and on the terms described hereby, and the Company shall pay the agreed remuneration fees (amounts) hereunder to the Copyright Holder.

1.2. Полученная лицензия дает Компании право на многоразовое (количественно неограниченное) использование Персонажей Фильмов (включая раздельное использование звукового и/или визуального компонентов Персонажей) отдельно (независимо) от Фильмов в любой форме и любыми способами, в т.ч. для изготовления (производства) любых видов товаров как продовольственных, так и непровольственных, включая любую печатную и **сувенирную** продукцию, создания настольных и/или электронных игр, **создание любых видов игрушек** и оказания любых видов услуг, (далее вместе именуемые – «Товары»), включая следующие способы:

1.2. The current(given) license entitles the Company the multiple (unlimited quantity) use of the Characters featuring in the Animated Films (including the separate use of audio and/or visual components of the Characters) separately (independently) from the Animated Films in any form and any means not limited for manufacturing (producing) any types of the goods, both food and non-food, including any printed materials and souvenirs type of items, creation of any type of gams including electronic games, producing any type of toys, and rendering of all types of services (hereinafter collectively referred to as "the Goods") including in the following manner:

1.2.1. Воспроизводить Персонажи Фильмов без ограничения тиража в виде Товаров (в т.ч. услуг) и/или на Товарах (в т.ч. их отдельных составляющих) и/или на их упаковках и/или любых рекламных материалах Товаров в любых необходимых для этого материальных формах (в т.ч. пространственно-объемных и печатных)

1.2.1. To reproduce the Characters featuring in the Animated Films without limitation of the circulation in the form of the Goods (including services) and/or on the Goods (including their individual components) and/or on their packaging and/or any

1

и при помощи любых необходимых для этого средств. Дизайн Товаров, а также варианты использования Персонажей в виде Товаров (в т.ч. услуг) и/или на Товарах (в т.ч. их отдельных составляющих) и/или на их упаковках и/или любых рекламных материалах Товаров Компания определяет самостоятельно, без согласования с Правообладателем.

1.2.2. Распространять Персонажи, воспроизведенные в соответствии с п.1.2.1. настоящего Договора, в виде Товаров (в т.ч. услуг) и/или на Товарах (в т.ч. их отдельных составляющих) и/или на их упаковках и/или любых рекламных материалах Товаров путем продажи или иного отчуждения Товаров и/или оказания услуг и/или посредством любого использования их упаковок и/или любых рекламных материалов и/или иным любым возможным способом.

1.2.3. Импортировать и/или экспортировать экземпляры Персонажей в виде Товаров (в т.ч. услуг) и/или на Товарах (в т.ч. их отдельных составляющих) и/или на их упаковках и/или любых рекламных материалах Товаров, изготовленных в соответствии с п.1.2.1. настоящего Договора, в целях распространения Товаров (в т.ч. оказания услуг) и/или распространения их упаковок и/или рекламных материалов и/или в иных целях.

1.2.4. Переводить реплики Персонажей на любые языки народов мира, а также иным образом перерабатывать Персонажи (или их части) в целях реализации полученных по настоящему Договору прав и использовать Персонажи в переработанном виде указанными выше способами без согласования с Правообладателем.

Предусмотренная настоящим пунктом переработка включает в т.ч. право Компании перерабатывать Персонажи путем использования элементов их одежды и/или экипировки, позволяющих изобразить Персонаж в обстановке, отличной от сюжета соответствующего Фильма, а также право Компании изменять и/или заменять звуковой ряд соответствующего Персонажа (в том числе на аудиозаписи, созданные Компанией самостоятельно либо с привлечением третьих лиц), соблюдая личные неимущественные права лиц, принявших участие в создании Фильмов.

1.3. Эталонные изображения Персонажей передаются Правообладателем Компании по соответствующему Акту.

1.4. За Правообладателем не сохраняется право на использование Персонажей предусмотренными настоящей исключительной лицензией способами, а также право на выдачу соответствующих лицензий и/или прав и/или разрешений (в т.ч. на неисключительной основе) третьим лицам.

1.5. Лицензия на использование Персонажей по настоящему Договору предоставлена Компании на срок с «01» сентября 2016 года (Первое сентября две

promotional/marketing/advertising materials of the Goods in any material form required (including spatial-volumetric and printed), with the use of any appropriate means. Design of the Goods, as well as variants of using the Characters in the form of the Goods (including services) and/or on the Goods (including their individual components) and/or on their packaging and/or any promotional materials of the Goods shall be determined by the Company independently without the consent of the Copyright Holder.

1.2.2. To distribute the Characters reproduced in accordance with paragraph 1.2.1. hereof in the form of the Goods (including services) and/or on the Goods (including their individual components) and/or on their packaging and/or any promotional/marketing/advertising materials of the Goods by sale or any other means of the Goods and/or rendering of services and/or by any use of their packaging and/or any promotional/marketing/advertising materials and/or in any other way possible.

1.2.3. To import and/or export items of the Characters in the form of the Goods (including services) and/or on the Goods (including their individual components) and/or on their packaging and/or any promotional/marketing/advertising materials of the Goods manufactured in accordance with paragraph 1.2.1. hereof for the purpose of distributing the Goods (including rendering of services) and/or distributing their packaging and/or promotional/marketing/advertising materials and/or for other purposes.

1.2.4. To translate the dialogues of the Characters into any languages worldwide, as well as otherwise modify the Characters (or their parts) in order to exercise the rights obtained hereunder and to use the Characters in a modified form in the above manner without the consent of the Copyright Holder.

Modifications described under the present paragraph includes the Company's right to modify the Characters by using their elements of clothing and/or accessories, which give the possibility to portray the Character in a setting different from the plot of the respective Animated Film, as well as the Company's right to modify and/or replace the sound of the respective Character (including on the audio recording created by the Company independently or with the involvement of third parties), respecting the personal non-proprietary rights of the authors involved in creating the Animated Films.

1.3. Referenced images of the Characters shall be transferred by the Copyright Holder to the Company under the relevant Act of Acceptance.

1.4. The Copyright Holder shall not be entitled to retain the right to use the Characters in the ways described by the present exclusive license, as well as to retain the right to issue the relevant licenses and/or

тысячи шестнадцатого года) по 31 августа 2021 года (Тридцать первое августа две тысячи двадцать первого года) включительно.

1.6. Полученная от Правообладателя по настоящему Договору лицензия распространяет своё действие на территорию всей Азии включая но не ограничиваясь территорией следующих стран: Индия.

1.7. Компания имеет право по своему усмотрению передавать (сублицензировать) полученные по настоящему Договору права использования Персонажей (а также права, указанные в п.1.8 и п.1.9 настоящего Договора) как в полном объеме, так и по частям любым третьим лицам.

1.8. Кроме того, Правообладатель предоставляет Компании на неисключительной основе права (неисключительную (простую) лицензию) и дает соответствующее разрешение на многоразовое использование имен собственных (названий) Персонажей, в рекламных материалах соответствующих Товаров (в т.ч. услуг), прайс-листах и другой документации, применяемой в процессе производства и/или реализации соответствующих Товаров (в т.ч. услуг), а также в качестве названий ассортиментных позиций соответствующих Товаров (в т.ч. услуг) и любым другим возможным способом без выплаты Правообладателю какого-либо дополнительного вознаграждения в течение в период всего срока действия исключительной лицензии, указанного в п.1.5 настоящего Договора, на территории, указанной в п.1.6. Договора.

Указанное выше право (лицензию) Компания может осуществлять как самостоятельно, так и путем передачи третьим лицам

1.9. Правообладатель предоставляет Компании на неисключительной основе права (неисключительную (простую) лицензию) и даёт соответствующее разрешение на многоразовое использование в целях индивидуализации производимых в рамках настоящего Договора Товаров и/или их упаковки и/или рекламных материалов, предусмотренных данным договором и без выплаты Правообладателю какого-либо вознаграждения в период всего срока действия исключительной лицензии, указанного в п.1.5 настоящего Договора, на территории, указанной в п.1.6. Договора, фирменного логотипа производителя Фильмов – Киностудии «Союзмультфильм» (фирменного написания «СОЮЗМУЛЬТФИЛЬМ»), в т.ч. путём его размещения на Товарах (включая этикетки и упаковки) и в рекламе Товаров способами предусмотренными данным Договором. Предоставление Компании вышеуказанных прав (лицензии) на использование логотипа ни при каких условиях не препятствует и не будет препятствовать использованию этого логотипа Правообладателем и уполномоченными им лицами любыми возможными способами и в любой форме.

rights and/or permissions (including on a non-exclusive basis) to third parties.

1.5. The license to use the Characters hereunder is provided to the Company for the period from September 01, 2016 (the first of September of two thousand and sixteen) through August 31, 2021 (the thirty first of August of two thousand and twenty first).

1.6. The license obtained from the Copyright Holder hereunder is extended to cover the entire territory of Asia including but not limited to territories of following countries: India.

1.7. The Company is entitled to transfer (sublicense) at its own discretion the rights obtained hereunder to use the Characters (as well as the rights specified in paragraphs 1.8 and 1.9 hereof) either in full, or in part to any third party.

1.8. In addition, the Copyright Holder provides the Company with the rights on a non-exclusive basis (non-exclusive (ordinary) license) and gives the relevant permission for repeated use of proper names (names) of the Characters in the promotional/marketing/advertising materials of the relevant Goods (including services). price lists and other documentation involved in the production process and/or sale of the relevant Goods (including services), as well as the names of items of the relevant Goods (including services) and in any other possible way without paying any additional compensation to the Copyright Holder during the period of the entire term of the exclusive license specified in paragraph 1.5 hereof on the territory specified in paragraph 1.6. hereof.

The Company shall be entitled to exercise the above right (license) both independently and through any third party.

1.9. In order to customize the Goods produced hereunder and/or packaging and/or promotional/marketing/advertising materials provided for herein, without paying any fees to the Copyright Holder for the entire term of the exclusive license specified in paragraph 1.5 hereof on the territory specified in paragraph 1.6. hereof, the Copyright Holder shall provide the Company with the rights on a non-exclusive basis (non-exclusive (ordinary) license) and gives the relevant permission for repeated use of corporate logo owned by the manufacturer of the Animated Films – the Film studio "Soyuzmultfilm" (corporate writing: "SOYUZMULTFILM"), including by placing it on the Goods (including labels and packaging) and when advertising the Goods by ways described hereby. Granting the above rights (license) for using the logo to the Company under no circumstances shall prevent and will prevent the use of this logo by the Copyright Holder and its authorized representatives in any way and in any form.

3

## 2. ПРАВА И ОБЯЗАННОСТИ СТОРОН

2.1. В целях исполнения настоящего Договора Правообладатель обязуется:

2.1.1. На период действия указанных в п.1.1., п.1.2. настоящего Договора исключительных прав (исключительной лицензии) Компании на Персонажи на территории, предусмотренной п.1.6. настоящего Договора, не передавать третьим лицам (как полностью, так и по частям)(в т.ч. не выдавать лицензий), а также самостоятельно не использовать права на Персонажи ( в т.ч. их части, фрагменты и пр.) любым из способов, предусмотренным п.1.2. настоящего Договора (включая п.п.1.2.1.-1.2.4. настоящего Договора).

2.1.2. По письменному запросу Компании или уполномоченных лиц предоставить им копии имеющихся у Правообладателя документов по производству Фильмов, необходимых для защиты и реализации полученных по настоящему Договору прав на Персонажи.

2.1.3. Не препятствовать Компании и/или уполномоченным лицам в осуществлении полученных по настоящему Договору прав.

2.2. В целях исполнения настоящего Договора Компания обязуется:

2.2.1. Своевременно и в полном объеме выплачивать Правообладателю суммы вознаграждения, предусмотренные ст.3 настоящего Договора.

2.2.2. Обеспечить надлежащее качество Товаров/услуг и их полное соответствие всем предъявляемым требованиям и стандартам.

2.2.3. При использовании Персонажей соблюдать указанные в ст.1 настоящего Договора сроки, способы и территорию их использования.

2.2.4. Привлекать для производства Товаров (оказания услуг) и/или их упаковок и/или рекламных материалов любых других лиц. Компания вправе самостоятельно определять количество использований Персонажей и по собственному усмотрению устанавливать объемы необходимых партий, тиражей и/или количество экземпляров, в т.ч. устанавливать по собственному усмотрению максимальное количество использований объектов интеллектуальных прав для сублицензиатов, если сочтет это необходимым.

2.2.5. Самостоятельно и за свой счет нести все расходы, связанные с реализацией полученных по настоящему Договору прав, если настоящим Договором прямо не предусмотрено иное.

2.2.6. Ежегодно, в течение 20 рабочих дней, следующих за отчётным годом, предоставлять Правообладателю Отчёт по использованию полученных по настоящему Договору прав с указанием поступлений и расходов Компании за отчётных год, а

## 2. RIGHTS AND OBLIGATIONS OF THE PARTIES

2.1. For the purposes hereof, the Copyright Holder shall:

2.1.1. Pursuant to the Act of Acceptance, within ten days from the date of signing by the Parties hereof, the Copyright Holder shall provide the Company with the Patterns of the Characters available to the Copyright Holder. The Patterns represent the original visual image of the Characters and include the following elements: graphical model of the Character (vector image), color layout of the Character in the Pantone and CMYK palette, as well as a copy of the logo of the manufacturer of the Animated Films on electronic media.

2.1.2. For the period of validity of exclusive rights (exclusive license) of the Company specified in paragraphs 1.1 and 1.2. hereof with regards to the Characters on the territory referred to in paragraph 1.6. hereof, the Copyright Holder shall not transfer the rights related (pertained) to the Characters (including their parts, fragments, etc.) to third parties (in whole or in part) (including prohibition to issue licenses), as well as shall not use the rights related (pertained) to the Characters by itself in any of the ways prescribed under paragraph 1.2. hereof (including paragraphs 1.2.1.-1.2.4. hereof).

2.1.3. Upon written request of the Company or its authorized representatives, the Copyright Holder shall provide them with the copies of documents of (related to) the production of the Animated Films necessary for the protection and exercise of the rights related to the Characters obtained hereunder.

2.1.4. The Copyright Holder shall not prevent the Company and/or authorized representatives from implementing the rights obtained hereunder.

2.2. For the purposes of executing the present Contract, the Company shall:

2.2.1. The Company shall in timely manner and in full pay the amount of the fees stipulated in paragraph 3 hereof to the Copyright Holder.

2.2.2. The Company shall ensure the proper quality of the Goods/services and their full compliance with all requirements and standards.

2.2.3. When using the Characters, the Company shall comply with the terms, methods and territory of their use stated in paragraph 1 hereof.

2.2.4. The Company shall attract any other entities or professionals for the production of the Goods (services) and/or their packaging and/or promotional/marketing/advertising materials. The Company shall be entitled to determine the number of the Characters` use and to set the volume of necessary batches, copies and/or number of instances at its sole discretion. At its own discretion, the Company shall also be entitled to set the maximum number of uses with

также начисления сумм платежей роялти.

2.3.. Компания и/или уполномоченные лица имеют право пресекать использование Персонажей третьими лицами, нарушающее полученные Компанией по настоящему Договору исключительные права (исключительные лицензии), в т.ч. путем обращения в судебные органы. При этом все судебные расходы несёт Компания. Такие расходы считаются расходами Компании по использованию полученных по настоящему Договору прав и учитываются как затраты при расчёте сумм платежей роялти по настоящему Договору.

regards to intellectual property rights for sublicensees, as it deems necessary.

2.2.5. The Company shall independently and at its own expense be responsible for all costs associated with the implementation of the rights obtained hereunder, unless the present Contract expressly provides otherwise.

2.2.6. Annually, within 20 business days following the reporting year, the Company shall provide the Copyright Holder with the Report about the procedure of using the rights received hereunder with an indication of income and expenditures of the Company for the reporting year, as well as the accrual of royalty payments.

2.3. The Company and/or authorized representatives shall be entitled to prevent the use of the Characters by third parties violating exclusive rights (exclusive license) received by the Company hereunder, including through pursuing litigation in the judicial authorities. In this case, all legal costs and expenses shall be incurred by the Company. Such expenses shall be considered as expenses of the Company for the use of the rights obtained hereunder and shall be recognized as costs when calculating the amounts of the royalty payments hereunder.

## 3. ВОЗНАГРАЖДЕНИЕ ПО ДОГОВОРУ

3.1. Вознаграждение Правообладателю за предоставление Лицензий по настоящему Договору состоит из суммы гарантированного минимума в размере 20000 (двадцать тысяч) долларов США и платежей роялти.

3.2. Сумма гарантированного минимума выплачивается Компанией в следующем порядке;

3.2.1. Вся сумма в размере 20000 (двадцать тысяч) долларов США выплачивается в течение десяти дней с даты подписания Сторонами настоящего Договора;

3.2.2. Сумма гарантированного минимума, полученная Правообладателем по настоящему Договору, относится к расходам Компании, учитываемым при начислении платежей роялти по настоящему Договору.

3.3. Платежи роялти начисляются Компанией в размере 25% (Двадцать пять процентов) от дохода Компании.

Доходом Компании считаются все суммы, полученные Компанией от реализации Товаров или от предоставления сублицензий по настоящему Договору третьим лицам, уменьшенные на расходы Компании по использованию полученных по настоящему Договору прав (в т.ч. расходы на рекламу Товаров, получение необходимых разрешений,все судебные расходы, указанные в п.2.3 настоящего Договора, а также выплаченный по настоящему договору гарантированный минимум).

## 3. PAYMENT PROCEDURE

3.1. Fees to the Copyright Holder for granting the Licenses hereunder consists of the guaranteed minimum in the amount of USD 20,000 (twenty thousand) and royalty payments.

3.2. The amount of the guaranteed minimum shall be paid by the Company according to the following procedure:

3.2.1. The whole amount of USD 20,000 (twenty thousand) shall be paid within ten days from the date of signing by the Parties hereof;

3.2.2. The amount of the guaranteed minimum received by the Copyright Holder hereunder shall be related to the Company's expenses recognized when calculating royalty payments hereunder.

3.3. Royalty payments shall be accrued by the Company in the amount of 25% (twenty five percent) of the Company's revenue.

The Company's revenues shall be considered as all amounts received by the Company from the sale of the Goods or from granting sublicenses hereunder to third parties, reduced by the expenses of the Company for using the rights obtained hereunder (including advertising costs of the Goods, obtaining the required permits, all legal costs and expenses referred to in paragraph 2.3 hereof, as well as the guaranteed minimum paid hereunder).

3.4. The amount of royalty payments accrued shall be reflected in the annual Reports of the Company.

3.4. Сумма начисленных платежей роялти отражается в ежегодных Отчётах Компании. Выплаты производятся Компанией в течение месяца после представления Правообладателю соответствующего Отчёта на расчётный счёт, указанный в Реквизитах Правообладателя в настоящем Договоре.

3.5. Никаких других отчислений и платежей за использование полученных по Договору прав использования Компания и/или уполномоченные ею лица Правообладателю не производят и производить не будут.

3.6. Датой оплаты считается поступление средств на расчетный счет Правообладателя. Уплата налогов и иных обязательных платежей осуществляется каждой Стороной самостоятельно.

## 4. ГАРАНТИИ СТОРОН

4.1. Заключая настоящий Договор, Стороны заявляют и гарантируют, что они имеют все права и полномочия, необходимые для заключения и надлежащего исполнения настоящего Договора, не имеют по этому поводу исков и/или претензий со стороны третьих лиц и урегулируют их самостоятельно и за свой счет в случае возникновения в будущем.

4.2. Правообладатель гарантирует, что он является законным обладателем авторских прав, передаваемых Компании по настоящему Договору, что данные права свободны от каких-либо обязательств перед третьими лицами и не обременены ими и что не существует в настоящее время и не будет существовать каких-либо заключенных Правообладателем договоров, соглашений, лицензий, разрешений, обязательств и т.д., препятствующих Компании и/или уполномоченным ею лицам использовать Персонажи в соответствии с настоящим Договором.

Правообладатель гарантирует, что никакие иные объекты прав, предоставленные по настоящему Договору, не нарушают чьих-либо законных прав и интересов, как-то: авторских или смежных прав, патентных прав, прав на торговую марку и/или товарный знак, прав собственности и т.п., а также не наносят ущерба чьим-либо чести и достоинству, деловой репутации.

4.3. Компания гарантирует, что при использовании Произведений не будет нарушать сроков, способов и территории использования, предусмотренных ст.1 настоящего Договора.

## 5. ОТВЕТСТВЕННОСТЬ СТОРОН

5.1. Сторона, не исполнившая или ненадлежащим образом исполнившая обязательства по настоящему Договору, обязана возместить другой стороне причиненные этим убытки при условии их документального подтверждения. Если сторона, нарушившая настоящий Договор, получила вследствие

Payments shall be made by the Company within one month after submission to the Copyright Holder of the Report to the settlement account specified in the Bank Details of the Copyright Holder herein.

3.5. No other royalties and payments for the use of the rights hereunder shall be made or will be made by the Company and/or its authorized representatives to the Copyright Holder.

3.6. The date of payment shall be the date of receipt of the funds to the settlement account of the Copyright Holder. Payment of taxes and other mandatory payments shall be carried out by each Party independently.

## 4. REPRESENTATIONS AND WARRANTIES OF THE PARTIES

4.1. By entering into the present Contract, the Parties represent and warrant that they possess all the rights and powers necessary for the conclusion and proper execution hereof, do not have any complaints and/or claims from third parties for this reason and will resolve any possible disputes on their own and at their own expense.

4.2. The Copyright Holder guarantees that it is the legitimate copyright holder provided to the Company hereunder, that these rights are free of any obligations to third parties and not burdened by them, and that there are or will be no contracts, agreements, licenses, permits, obligations, etc. concluded by the Copyright Holder preventing the Company and/or its authorized representatives to use the Characters in accordance herewith.

The Copyright Holder guarantees that no other objects of titles granted hereunder do not violate anyone's legitimate rights and interests, such as copyright and/or related rights, patent rights, trademark rights and/or brand name rights, property rights, etc., and not prejudice anyone's honor and dignity, or business reputation.

4.3. The Company guarantees that it will not violate the terms, methods and territory intended for use of the Animated Films or the Characters, as stipulated in paragraph 1 hereof.

## 5. LIABILITY OF THE PARTIES

5.1. The Party failing to perform or improperly performed its obligations hereunder shall compensate the other Party for the damages incurred, provided the documentary confirmation of such damages. If the Party, which has violated the terms hereof, received any income as a result of such violation, the damaged Party

этого доходы, сторона, права которой нарушены, вправе требовать возмещения наряду с другими убытками упущенной выгоды в размере не меньшем, чем такие доходы.

5.2. В каждом случае нарушения Компанией хотя бы одного из обязательств, предусмотренных любым из п.п. 2.2.3, 4.3 настоящего Договора Компания выплачивает Правообладателю штраф в размере 10 000 (Десять тысяч) долларов США в отношении каждого из Персонажей, а также полностью возмещает причиненные Правообладателю убытки.

5.3. В случае невыполнения и/или ненадлежащего выполнения Компанией предусмотренных настоящим Договором обязательств по выплате вознаграждения Компания выплачивает Правообладателю штраф в размере 0,1 % от суммы платежа за каждый день просрочки.

5.4. В каждом случае нарушения Правообладателем любого из своих обязательств, оговоренных в п. 2.1.2 настоящего Договора, Правообладатель обязан уплатить Компании или уполномоченным лицам, права которых будут нарушены (по выбору Компании), штраф в размере 10 000 (Десять тысяч) долларов США за каждый Персонаж, в отношении которого допущено такое нарушение, а также возместить Компании и уполномоченным лицам все документально подтвержденные убытки (включая упущенную выгоду), причиненные в результате этого нарушения.

5.5. В случае, если вступившим в законную силу решением суда соответствующей юрисдикции будет установлено отсутствие у Правообладателя исключительного права на использование Персонажа способами, предусмотренными п.1.2. настоящего Договора, и/или иных прав, переданных Компании по настоящему Договору, Компания имеет право в одностороннем порядке отказаться от исполнения настоящего Договора в отношении этого Персонажа и/или иного объекта или от исполнения настоящего Договора в целом и расторгнуть настоящий Договор в одностороннем порядке путем направления Правообладателю соответствующего письменного уведомления в части, касающейся данного Персонажа и/или соответствующего объекта или полностью без выплаты Правообладателю каких-либо неустоек, компенсаций, возмещения убытков и пр., а также взыскать причиненные таким расторжением убытки (включая упущенную выгоду) и выплаченное Правообладателю вознаграждение.

## 6. КОНФИДЕНЦИАЛЬНОСТЬ

6.1. Финансовые условия настоящего Договора, а также вся производственная, финансовая, коммерческая и иная информация, предоставляемая Сторонами друг другу в процессе исполнения настоящего Договора, являются конфиденциальной информацией. Стороны примут все меры, чтобы

which rights were violated shall be entitled to demand compensation related to the loss of profits along with other losses in the amount not smaller than such incomes.

5.2. In each case of violation by the Company of at least one of its obligations under paragraphs 2.2.3 or 4.3 hereof, the Company shall pay a penalty to the Copyright Holder in the amount of USD 10,000 (ten thousand) in respect of each Character, as well as shall fully reimburse the damages incurred by the Copyright Holder.

5.3. In case of failure to fulfill and/or improper fulfillment by the Company hereunder of its obligations to pay fees, the Company shall pay a penalty to the Copyright Holder in the amount of 0.1% of the amount of payment for each day of delay.

5.4. In each case of a violation by the Copyright Holder of any of its obligations stipulated in paragraph 2.1.2 hereof, the Copyright Holder shall pay a penalty to the Company or the authorized representatives whose rights are violated (at the Company's choice) in the amount of USD 10,000 (ten thousand) for each Character in respect of which such violation was in place. In addition, the Copyright Holder shall reimburse the Company and its authorized representatives for all documented losses (including loss of profits) caused as a result of such violation.

5.5. In case it will be established in accordance with an enforceable decision of the court of the relevant jurisdiction that the Copyright Holder has no exclusive right to use the Character by the ways specified in paragraph 1.2. hereof, and/or other rights transferred to the Company hereunder, the Company shall be entitled to unilaterally withdraw from execution hereof in respect of such Character and/or other object or from execution hereof as a whole and to terminate the present Contract unilaterally by submitting a written notification to the Copyright Holder in respect of such Character and/or the respective object, or to terminate the present Contract in full without payment to the Copyright Holder of any penalties, compensations, damages etc., as well as to recover losses or damages caused by such termination (including loss of profits) and the amount of fees paid to the Copyright Holder.

## 6. CONFIDENTIALITY

6.1. The financial terms hereof, as well as all production, financial, commercial and other information provided by the Parties to each other during the execution hereof shall be confidential. The Parties shall take all efforts to protect confidential information from disclosure. Submission of confidential information to

предохранить конфиденциальную информацию от разглашения. Передача конфиденциальной информации третьим лицам (за исключением приглашенных сторонами адвокатов, аудиторов, консультантов), опубликование и иное разглашение возможно лишь с письменного разрешения Стороны, ее предоставившей, а также в случаях, предусмотренных законодательством.

### 7. РАЗРЕШЕНИЕ СПОРОВ

7.1. Все споры и разногласия, которые могут возникнуть между сторонами по вопросам, не нашедшим своего разрешения в тексте настоящего Договора, а также все вопросы, прямо неурегулированные настоящим Договором, будут разрешаться путем направления претензий. Срок ответа на претензию – 20 (двадцать дней) с момента получения.

7.2. В случае отсутствия ответа и/или недостижения согласия по спорным вопросам в течение указанного срока, споры передаются на рассмотрение арбитражного суда г.Нью-Йорка (США). и разрешаются на основе норм права штата Нью-Йорк.

### 8. СРОК ДЕЙСТВИЯ ДОГОВОРА

8.1. Настоящий договор признается заключенным и вступает в силу с даты его подписания Сторонами, указанной на первой странице настоящего Договора, и действует по «31» августа 2021 года.

8.2. Финансовые обязательства Сторон, а также обязанности Компании по предоставлению Отчётов остаются в силе до их надлежащего исполнения.

8.3. В течение семи месяцев с момента окончания срока действия настоящего договора, а также в течение трёх месяцев в случае расторжения настоящего Договора по соглашению Сторон или из-за нарушения Компанией условий договора, Компания, после подписания Сторонами соответствующего соглашения, будет иметь неисключительное право распространения остатков Продукции, изготовленной Компанией в соответствии с настоящим Договором, с обязательными выплатами роялти, согласно условиям настоящего Договора. В соглашении Стороны установят количество остатков Продукции и сроки платежей роялти за неё.

### 9.ОБСТОЯТЕЛЬСТВА НЕПРЕОДОЛИМОЙ СИЛЫ

9.1. Стороны освобождаются от ответственности за частичное или полное неисполнение обязательств по настоящему Договору, если оно явилось следствием

third parties (with the exception of the lawyers, auditors or advisors invited by the Parties), making such information publicly available or other disclosure of such information shall be possible only with the written authorization of the respective Party, which provided such confidential information, as well as in cases stipulated by the applicable legislation.

### 7. DISPUTE RESOLUTION

7.1. All disputes and disagreements that may arise between the Parties on the issues that failed to be resolved in the text hereof, as well as on all issues directly not regulated hereby shall be resolved by submitting the respective claims. The response time to such claim shall be 20 (twenty) days from the date of its receipt.

7.2. In case of the absence of a response and/or failure to reach an agreement on a matter of issue within a specified period, disputes shall be referred to the arbitration court of New York (USA) and resolved based on the applicable legislation of the state of New York (USA).

### 8. TERM OF THE CONTRACT

8.1. The present Contract shall be deemed concluded and shall enter into force on the date of its signing by the Parties specified on the first page hereof, and shall be valid until August 31, 2021.

8.2. Financial obligations of the Parties, as well as the Company's obligations to provide the corresponding Reports shall remain in force until their proper execution.

8.3. Within seven months from the date of expiry hereof, as well as within three months in case of termination hereof by an agreement of the Parties or due to breach by the Company of the terms hereof, the Company shall be entitled after signing the relevant agreement by the Parties to have the non-exclusive right of distributing residual stock of the Goods manufactured by the Company in accordance herewith, with a mandatory royalty payments under the terms hereof. The Parties shall determine the amount of residual stock of the Goods and agree on the terms of royalty payments for such residual stock.

### 9. FORCE MAJEURE

9.1. The Parties shall be relieved from responsibility for partial or complete failure to fulfill obligations hereunder if it was caused by force majeure arising after the conclusion hereof.

обстоятельств непреодолимой силы, возникших после заключения настоящего Договора.

К таким обстоятельствам в контексте настоящего Договора относятся стихийные бедствия, военные действия, введение чрезвычайного положения, акты террора, массовые беспорядки, если такие обстоятельства непосредственно препятствуют исполнению Сторонами своих обязательств.

Факт наступления таких обстоятельств и их продолжительность должны быть подтверждены Торгово-промышленной палатой РФ или США и любой из стран Территории либо иным компетентным органом

9.2. Сторона, исполнению обязательств которой препятствуют вышеуказанные обстоятельства, обязана в письменной форме уведомить другую Сторону об этом в течение 10 (десяти) дней со дня их наступления. В противном случае Сторона, ссылающаяся на обстоятельства непреодолимой силы, освобождается от ответственности за неисполнение своих обязательств по настоящему Договору только с даты уведомления.

## 10. РАСТОРЖЕНИЕ ДОГОВОРА

10.1. Стороны вправе досрочно расторгнуть настоящий Договор по взаимному письменному соглашению.

## 11. ЗАКЛЮЧИТЕЛЬНЫЕ ПОЛОЖЕНИЯ

11.1. Любые изменения и дополнения к настоящему Договору имеют юридическую силу и являются неотъемлемой частью настоящего Договора, если они совершены в письменной форме и подписаны полномочными представителями обеих Сторон. Недействительность отдельных положений настоящего Договора не влечет недействительности прочих его частей.

11.2. В случае реорганизации Правообладателя его права и обязанности по настоящему Договору переходят к правопреемникам. В случае ликвидации Правообладателя Компания (в т.ч. уполномоченные лица) сохраняют в полном объеме все передаваемые Компании по настоящему Договору права и разрешения, включая имущественные (в т.ч. исключительные) права (лицензии).

11.3. С момента даты подписания настоящего Договора, указанной на первой странице настоящего Договора, все предшествующие документы и переписка между Сторонами по предмету Договора утрачивают силу.

11.4. Настоящий Договор составлен в двух экземплярах на русском и английском языках, имеющих равную юридическую силу, из которых один

Such circumstances in the context hereof include natural disasters, acts of war, state of emergency, acts of terrorism, riots, if such circumstances directly hamper the performance by the Parties of their obligations hereunder.

The fact of occurrence of such circumstances and their duration shall be confirmed by the Chamber of Commerce and Industry of the Russian Federation or the United States and any country on the Territory or other competent authority.

9.2. The Party, which is hampered to fulfill its obligation hereunder by the above circumstances, shall notify the other Party in writing within 10 (ten) days from the date of their occurrence. Otherwise, the Party, which refers to force majeure, shall be exempt from liability for failure to perform its obligations hereunder only from the date of notification.

## 10. TERMINATION OF THE CONTRACT

10.1. The Parties shall be entitled to terminate the present Contract by mutual written agreement.

## 11. FINAL PROVISIONS

11.1. Any changes or additions hereto shall be legally binding and shall be an integral part hereof if done in writing and signed by the authorized representatives of both Parties. Invalidity of individual provisions hereof shall not entail invalidity of its other provisions.

11.2. In case of reorganization of the Copyright Holder, its rights and obligations hereunder shall be transferred to the successors. In case of liquidation of the Copyright Holder, the Company (including its authorized representatives) shall retain in full all rights and permissions transferred to the Company hereunder, including property (including exclusive) rights (licenses).

11.3. From the date of signing hereof specified on the first page hereof, all prior documents and correspondence between the Parties on the subject matter hereof shall become void.

11.4. The present Contract is made in two copies in Russian and English, having equal legal force, one copy – for the Copyright Holder, and another copy – for the Company.

11.5. The Parties shall notify each other within three days on any change of their addresses or bank details. Otherwise, submission of correspondence to the

экземпляр находится у Правообладателя, второй - у Компании.

11.5. Стороны обязаны уведомлять друг друга в трехдневный срок об изменении адресов, банковских реквизитов. В противном случае направление корреспонденции на прежний адрес считается надлежащим извещением соответствующей Стороны.

previous address shall be considered as the proper notification of the Party concerned.

## 12. АДРЕСА И БАНКОВСКИЕ РЕКВИЗИТЫ СТОРОН

**ПРАВООБЛАДАТЕЛЬ:**

Федеральное государственное унитарное предприятие «Творческо-производственное объединение «Киностудия «**Союзмультфильм**»

Адрес местонахождения: 127006, г. Москва, ул. Долгоруковская, д.23а

Фактический адрес: 27006, г. Москва,ул. Долгоруковская, д.25

  account # 40502978038050000093
  SWIFT – код    SABRRUMM
  Наименование банка SBERBANK
  Город, страна    MOSCOW, RUSSIA
  Банки-корреспонденты:
  в долларах США
  account# 40502840238001000022
  SWIFT – код    BKTRUS33
  Наименование банка  Deutsche Bank Trust
  Company Americas
  Город, страна    New York, USA
  Номер корр. Счета    04403077
  Тел.:  8 (499) 978-43-69
  E-mail: iiifo@soüzmult.ru

**ДИРЕКТОР**_____ /Давыдов Г.Б./

/Stamp here/

**КОМПАНИЯ:**
**LaRubInt Corp**
9281 Shore Rd. Ste. 204 Brooklyn NY 11209 USA
Laila Rubstein +1.646.435.1111
laila_rubstein@yahoo.com
WIRE CITIBANK
330 MADISON AVENUE NEW YORK NY 10017 USA
LARUBINT, CORP.  ABA# 021000089
ACCOUNT# 4998104273
SWIFT CITIUS33

**ПРЕЗИДЕНТ**_____ /Ляля Рубштейн/

/Stamp here/

## 12. BANK DETAILS AND SIGNATURES OF THE PARTIES

**THE COPYRIGHT HOLDER:**

Federal State Unitary Enterprise "Creative and Production studio "**Soyuzmultfilm**".

Legal address: 23a Dolgorukovskaya str., 127006, Moscow

Actual address: 25 Dolgorukovskaya str., 127006, Moscow

  account # 40502978038050000093
  SWIFT –    SABRRUMM
  Bank Name    SBERBANK
  City, Country    MOSCOW, RUSSIA
  Correspondent bank:
  Currency: USA Dollars
  account# 40502840238001000022
  SWIFT    BKTRUS33
  Bank Name    Deutsche Bank Trust
  Company Americas
  City, Country    New York, USA
  Correspondent Account# 04403077
  Tel.:  7 (499) 978-43-69
  E-mail: info@souzmult.ru

**DIRECTOR**_____ /Davydov G.B./

/Stamp here/

**THE COMPANY:**
**LaRubInt Corp**
9281 Shore Rd. Ste. 204 Brooklyn NY 11209 USA
Laila Rubstein +1.646.435.1111
laila_rubstein@yahoo.com
WIRE CITIBANK
330 MADISON AVENUE NEW YORK NY 10017 USA LARUBINT, CORP.  ABA# 021000089
ACCOUNT# 4998104273
SWIFT CITIUS33

**PRESIDENT**_____ /Laila Rubstein/

/Stamp here/

10

# **EXHIBIT 3**

| ДОГОВОР № 27/16 | CONTRACT № 27/16 |
|---|---|

г.Москва «30»августа 2016 г.

Moscow, Russian Federation August 30, 2016

Федеральное государственное унитарное предприятие «Творческо-производственное объединение «Киностудия «Союзмультфильм», именуемое в дальнейшем «Правообладатель», в лице и.о.директора Давыдова Г.Б., действующего на основании Устава, с одной стороны, и LaRubInt Corp.- американская компания, зарегистрированная по адресу 9281 Shore Rd. Ste. 204 Brooklyn NY 11209 USA, (именуемое в дальнейшем «Компания»), в лице President of LaRubInt Corp Ляли Рубштейн, с другой стороны, (далее также совместно именуемые «Стороны», а по отдельности – «Сторона»), заключили настоящий Договор о нижеследующем:

Federal State Unitary Enterprise "Creative and Production studio "Soyuzmultfilm", hereinafter referred to as "the Copyright Holder" (IP Owner), represented by Acting Director Davydov G.B., acting under the Charter, on the one part, and LaRubInt Corp., an American company registered at the following address: 9281 Shore Rd. Ste. 204 Brooklyn NY 11209 USA (hereinafter referred to as "the Company"), represented by the President of LaRubInt Corp. Laila Rubstein, on the other part (hereinafter collectively referred to as "the Parties" and individually referred to as "the Party"), have concluded the present Contract as follows:

## 1.ПРЕДМЕТ ДОГОВОРА

## 1. SUBJECT OF THE CONTRACT

1.1. Правообладатель предоставляет Компании исключительную лицензию на использование частей мультипликационных фильмов Киностудии «Союзмультфильм» «Крокодил Гена»(1969г.), «Чебурашка»(1971г.), «Шапокляк»(1974г.), «Чебурашка идёт в школу»(1983г.) (далее – «Фильмы»), а именно: зафиксированных в визуальном ряде Фильмов персонажей, представляющих собой динамические кукольные образы героев (Чебурашка, крокодил Гена, Шапокляк) и других действующих лиц Фильмов (далее – «Персонажи»), в порядке и на условиях настоящего Договора, а Компания обязуется выплачивать Правообладателю предусмотренное настоящим Договором вознаграждение.

1.1. The Copyright Holder provides the Company the exclusive license to use the characters of the following animated series of the Film studio "Soyuzmultfilm": " Gena the Crocodile" (1969), "Cheburashka" (1971), "Shapoklyak" (1974), "Cheburashka goes to school" (1983) (hereinafter referred to as "the Animated Films"), described as following: characters recorded in the visual imagery of the Animated Films that represent the dynamic puppet images of the characters (Cheburashka, Gena the Crocodile, Shapoklyak), as well as other cast of characters featuring in the Animated Films (hereinafter referred to as "the Characters"), in the order and on the terms described hereby, and the Company shall pay the agreed remuneration fees (amounts) hereunder to the Copyright Holder.

1.2. Полученная лицензия дает Компании право на многоразовое (количественно неограниченное) использование Персонажей Фильмов (включая раздельное использование звукового и/или визуального компонентов Персонажей) отдельно (независимо) от Фильмов в любой форме и любыми способами, в т.ч. для изготовления (производства) любых видов товаров как продовольственных, так и непровольственных, включая любую печатную и **сувенирную** продукцию, создания настольных и/или электронных игр, **создание любых видов игрушек** и оказания любых видов услуг, (далее вместе именуемые – «Товары»), включая следующие способы:

1.2. The current(given) license entitles the Company the multiple (unlimited quantity) use of the Characters featuring in the Animated Films (including the separate use of audio and/or visual components of the Characters) separately (independently) from the Animated Films in any form and any means not limited for manufacturing (producing) any types of the goods, both food and non-food, including any printed materials and souvenirs type of items, creation of any type of gams including electronic games, producing any type of toys, and rendering of all types of services (hereinafter collectively referred to as "the Goods") including in the following manner:

1.2.1. Воспроизводить Персонажи Фильмов без ограничения тиража в виде Товаров (в т.ч. услуг) и/или на Товарах (в т.ч. их отдельных составляющих) и/или на их упаковках и/или любых рекламных материалах Товаров в любых необходимых для этого материальных

1.2.1. To reproduce the Characters featuring in the Animated Films without limitation of the circulation in the form of the Goods (including services) and/or on the Goods (including their individual components)

1

формах (в т.ч. пространственно-объемных и печатных) и при помощи любых необходимых для этого средств. Дизайн Товаров, а также варианты использования Персонажей в виде Товаров (в т.ч. услуг) и/или на Товарах (в т.ч. их отдельных составляющих) и/или на их упаковках и/или любых рекламных материалах Товаров Компания определяет самостоятельно, без согласования с Правообладателем.

1.2.2. Распространять Персонажи, воспроизведенные в соответствии с п.1.2.1. настоящего Договора, в виде Товаров (в т.ч. услуг) и/или на Товарах (в т.ч. их отдельных составляющих) и/или на их упаковках и/или любых рекламных материалах Товаров путем продажи или иного отчуждения Товаров и/или оказания услуг и/или посредством любого использования их упаковок и/или любых рекламных материалов и/или иным любым возможным способом.

1.2.3. Импортировать и/или экспортировать экземпляры Персонажей в виде Товаров (в т.ч. услуг) и/или на Товарах (в т.ч. их отдельных составляющих) и/или на их упаковках и/или любых рекламных материалах Товаров, изготовленных в соответствии с п.1.2.1. настоящего Договора, в целях распространения Товаров (в т.ч. оказания услуг) и/или распространения их упаковок и/или рекламных материалов и/или в иных целях.

1.2.4. Переводить реплики Персонажей на любые языки народов мира, а также иным образом перерабатывать Персонажи (или их части) в целях реализации полученных по настоящему Договору прав и использовать Персонажи в переработанном виде указанными выше способами без согласования с Правообладателем.

Предусмотренная настоящим пунктом переработка включает в т.ч. право Компании перерабатывать Персонажи путем использования элементов их одежды и/или экипировки, позволяющих изобразить Персонаж в обстановке, отличной от сюжета соответствующего Фильма, а также право Компании изменять и/или заменять звуковой ряд соответствующего Персонажа (в том числе на аудиозаписи, созданные Компанией самостоятельно либо с привлечением третьих лиц), соблюдая личные неимущественные права лиц, принявших участие в создании Фильмов.

1.3. Эталонные изображения Персонажей передаются Правообладателем Компании по соответствующему Акту.

1.4. За Правообладателем не сохраняется право на использование Персонажей предусмотренными настоящей исключительной лицензией способами, а также право на выдачу соответствующих лицензий и/или прав и/или разрешений (в т.ч. на неисключительной основе) третьим лицам.

1.5. Лицензия на использование Персонажей по настоящему Договору предоставлена Компании на

and/or on their packaging and/or any promotional/marketing/advertising materials of the Goods in any material form required (including spatial-volumetric and printed), with the use of any appropriate means. Design of the Goods, as well as variants of using the Characters in the form of the Goods (including services) and/or on the Goods (including their individual components) and/or on their packaging and/or any promotional materials of the Goods shall be determined by the Company independently without the consent of the Copyright Holder.

1.2.2. To distribute the Characters reproduced in accordance with paragraph 1.2.1. hereof in the form of the Goods (including services) and/or on the Goods (including their individual components) and/or on their packaging and/or any promotional/marketing/advertising materials of the Goods by sale or any other means of the Goods and/or rendering of services and/or by any use of their packaging and/or any promotional/marketing/advertising materials and/or in any other way possible.

1.2.3. To import and/or export items of the Characters in the form of the Goods (including services) and/or on the Goods (including their individual components) and/or on their packaging and/or any promotional/marketing/advertising materials of the Goods manufactured in accordance with paragraph 1.2.1. hereof for the purpose of distributing the Goods (including rendering of services) and/or distributing their packaging and/or promotional/marketing/advertising materials and/or for other purposes.

1.2.4. To translate the dialogues of the Characters into any languages worldwide, as well as otherwise modify the Characters (or their parts) in order to exercise the rights obtained hereunder and to use the Characters in a modified form in the above manner without the consent of the Copyright Holder.

Modifications described under the present paragraph includes the Company's right to modify the Characters by using their elements of clothing and/or accessories, which give the possibility to portray the Character in a setting different from the plot of the respective Animated Film, as well as the Company's right to modify and/or replace the sound of the respective Character (including on the audio recording created by the Company independently or with the involvement of third parties), respecting the personal non-proprietary rights of the authors involved in creating the Animated Films.

1.3. Referenced images of the Characters shall be transferred by the Copyright Holder to the Company under the relevant Act of Acceptance.

1.4. The Copyright Holder shall not be entitled to retain the right to use the Characters in the ways described by the present exclusive license, as well as to

2

срок с «01» сентября 2016 года (Первое сентября две тысячи шестнадцатого года) по 31 августа 2021 года (Тридцать первое августа две тысячи двадцать первого года) включительно.

1.6. Полученная от Правообладателя по настоящему Договору лицензия распространяет своё действие на территорию всей Северной Америки включая но не ограничиваясь территорией следующих стран: США и Канада.

1.7. Компания имеет право по своему усмотрению передавать (сублицензировать) полученные по настоящему Договору права использования Персонажей (а также права, указанные в п.1.8 и п.1.9 настоящего Договора) как в полном объеме, так и по частям любым третьим лицам.

1.8. Кроме того, Правообладатель предоставляет Компании на неисключительной основе права (неисключительную (простую) лицензию) и дает соответствующее разрешение на многоразовое использование имен собственных (названий) Персонажей, в рекламных материалах соответствующих Товаров (в т.ч. услуг), прайс-листах и другой документации, применяемой в процессе производства и/или реализации соответствующих Товаров (в т.ч. услуг), а также в качестве названий ассортиментных позиций соответствующих Товаров (в т.ч. услуг) и любым другим возможным способом без выплаты Правообладателю какого-либо дополнительного вознаграждения в течение в период всего срока действия исключительной лицензии, указанного в п.1.5 настоящего Договора, на территории, указанной в п.1.6. Договора.

Указанное выше право (лицензию) Компания может осуществлять как самостоятельно, так и путем передачи третьим лицам

1.9. Правообладатель предоставляет Компании на неисключительной основе права (неисключительную (простую) лицензию) и даёт соответствующее разрешение на многоразовое использование в целях индивидуализации производимых в рамках настоящего Договора Товаров и/или их упаковки и/или рекламных материалов, предусмотренных данным договором и без выплаты Правообладателю какого-либо вознаграждения в период всего срока действия исключительной лицензии, указанного в п.1.5 настоящего Договора, на территории, указанной в п.1.6. Договора, фирменного логотипа производителя Фильмов – Киностудии «Союзмультфильм» (фирменного написания «СОЮЗМУЛЬТФИЛЬМ»), в т.ч. путём его размещения на Товарах (включая этикетки и упаковки) и в рекламе Товаров способами предусмотренными данным Договором. Предоставление Компании вышеуказанных прав (лицензии) на использование логотипа ни при каких условиях не препятствует и не будет препятствовать использованию этого логотипа Правообладателем и уполномоченными им лицами любыми возможными

retain the right to issue the relevant licenses and/or rights and/or permissions (including on a non-exclusive basis) to third parties.

1.5. The license to use the Characters hereunder is provided to the Company for the period from September 01, 2016 (the first of September of two thousand and sixteen) through August 31, 2021 (the thirty first of August of two thousand and twenty first).

1.6. The license obtained from the Copyright Holder hereunder is extended to cover the entire territory of North America including but not limited to territories of following countries: USA and Canada.

1.7. The Company is entitled to transfer (sublicense) at its own discretion the rights obtained hereunder to use the Characters (as well as the rights specified in paragraphs 1.8 and 1.9 hereof) either in full, or in part to any third party.

1.8. In addition, the Copyright Holder provides the Company with the rights on a non-exclusive basis (non-exclusive (ordinary) license) and gives the relevant permission for repeated use of proper names (names) of the Characters in the promotional/marketing/advertising materials of the relevant Goods (including services), price lists and other documentation involved in the production process and/or sale of the relevant Goods (including services), as well as the names of items of the relevant Goods (including services) and in any other possible way without paying any additional compensation to the Copyright Holder during the period of the entire term of the exclusive license specified in paragraph 1.5 hereof on the territory specified in paragraph 1.6. hereof.

The Company shall be entitled to exercise the above right (license) both independently and through any third party.

1.9. In order to customize the Goods produced hereunder and/or packaging and/or promotional/marketing/advertising materials provided for herein, without paying any fees to the Copyright Holder for the entire term of the exclusive license specified in paragraph 1.5 hereof on the territory specified in paragraph 1.6. hereof, the Copyright Holder shall provide the Company with the rights on a non-exclusive basis (non-exclusive (ordinary) license) and gives the relevant permission for repeated use of corporate logo owned by the manufacturer of the Animated Films – the Film studio "Soyuzmultfilm" (corporate writing: "SOYUZMULTFILM"), including by placing it on the Goods (including labels and packaging) and when advertising the Goods by ways described hereby. Granting the above rights (license) for using the logo to the Company under no circumstances shall prevent and will prevent the use of this logo by the Copyright Holder and its authorized representatives in any way and in any form.

3

способами и в любой форме.

## 2. ПРАВА И ОБЯЗАННОСТИ СТОРОН

2.1. В целях исполнения настоящего Договора Правообладатель обязуется:

2.1.1. На период действия указанных в п.1.1., п.1.2. настоящего Договора исключительных прав (исключительной лицензии) Компании на Персонажи на территории, предусмотренной п.1.6. настоящего Договора, не передавать третьим лицам (как полностью, так и по частям)(в т.ч. не выдавать лицензий), а также самостоятельно не использовать права на Персонажи ( в т.ч. их части, фрагменты и пр.) любым из способов, предусмотренным п.1.2. настоящего Договора (включая п.п.1.2.1.-1.2.4. настоящего Договора).

2.1.2. По письменному запросу Компании или уполномоченных лиц предоставить им копии имеющихся у Правообладателя документов по производству Фильмов, необходимых для защиты и реализации полученных по настоящему Договору прав на Персонажи.

2.1.3. Не препятствовать Компании и/или уполномоченным лицам в осуществлении полученных по настоящему Договору прав.

2.2. В целях исполнения настоящего Договора Компания обязуется:

2.2.1. Своевременно и в полном объеме выплачивать Правообладателю суммы вознаграждения, предусмотренные ст.3 настоящего Договора.

2.2.2. Обеспечить надлежащее качество Товаров/услуг и их полное соответствие всем предъявляемым требованиям и стандартам.

2.2.3. При использовании Персонажей соблюдать указанные в ст.1 настоящего Договора сроки, способы и территорию их использования.

2.2.4. Привлекать для производства Товаров (оказания услуг) и/или их упаковок и/или рекламных материалов любых других лиц. Компания вправе самостоятельно определять количество использований Персонажей и по собственному усмотрению устанавливать объемы необходимых партий, тиражей и/или количество экземпляров, в т.ч. устанавливать по собственному усмотрению максимальное количество использований объектов интеллектуальных прав для сублицензиатов, если сочтет это необходимым.

2.2.5. Самостоятельно и за свой счет нести все расходы, связанные с реализацией полученных по настоящему Договору прав, если настоящим Договором прямо не предусмотрено иное.

2.2.6. Ежегодно, в течение 20 рабочих дней, следующих за отчётным годом, предоставлять Правообладателю Отчёт по использованию

## 2. RIGHTS AND OBLIGATIONS OF THE PARTIES

2.1. For the purposes hereof, the Copyright Holder shall:

2.1.1. Pursuant to the Act of Acceptance, within ten days from the date of signing by the Parties hereof, the Copyright Holder shall provide the Company with the Patterns of the Characters available to the Copyright Holder. The Patterns represent the original visual image of the Characters and include the following elements: graphical model of the Character (vector image), color layout of the Character in the Pantone and CMYK palette, as well as a copy of the logo of the manufacturer of the Animated Films on electronic media.

2.1.2. For the period of validity of exclusive rights (exclusive license) of the Company specified in paragraphs 1.1 and 1.2. hereof with regards to the Characters on the territory referred to in paragraph 1.6. hereof, the Copyright Holder shall not transfer the rights related (pertained) to the Characters (including their parts, fragments, etc.) to third parties (in whole or in part) (including prohibition to issue licenses), as well as shall not use the rights related (pertained) to the Characters by itself in any of the ways prescribed under paragraph 1.2. hereof (including paragraphs 1.2.1.-1.2.4. hereof).

2.1.3. Upon written request of the Company or its authorized representatives, the Copyright Holder shall provide them with the copies of documents of (related to) the production of the Animated Films necessary for the protection and exercise of the rights related to the Characters obtained hereunder.

2.1.4. The Copyright Holder shall not prevent the Company and/or authorized representatives from implementing the rights obtained hereunder.

2.2. For the purposes of executing the present Contract, the Company shall:

2.2.1. The Company shall in timely manner and in full pay the amount of the fees stipulated in paragraph 3 hereof to the Copyright Holder.

2.2.2. The Company shall ensure the proper quality of the Goods/services and their full compliance with all requirements and standards.

2.2.3. When using the Characters, the Company shall comply with the terms, methods and territory of their use stated in paragraph 1 hereof.

2.2.4. The Company shall attract any other entities or professionals for the production of the Goods (services) and/or their packaging and/or promotional/marketing/advertising materials. The Company shall be entitled to determine the number of the Characters' use and to set the volume of necessary batches, copies and/or number of instances at its sole

4

полученных по настоящему Договору прав с указанием поступлений и расходов Компании за отчётный год, а также начисления сумм платежей роялти.

2.3.. Компания и/или уполномоченные лица имеют право пресекать использование Персонажей третьими лицами, нарушающее полученные Компанией по настоящему Договору исключительные права (исключительные лицензии), в т.ч. путем обращения в судебные органы. При этом все судебные расходы несёт Компания. Такие расходы считаются расходами Компании по использованию полученных по настоящему Договору прав и учитываются как затраты при расчёте сумм платежей роялти по настоящему Договору.

### 3. ВОЗНАГРАЖДЕНИЕ ПО ДОГОВОРУ

3.1. Вознаграждение Правообладателю за предоставление Лицензий по настоящему Договору состоит из суммы гарантированного минимума в размере 20000 (двадцать тысяч) долларов США и платежей роялти.

3.2. Сумма гарантированного минимума выплачивается Компанией в следующем порядке;

3.2.1. Вся сумма в размере 20000 (двадцать тысяч) долларов США выплачивается в течение десяти дней с даты подписания Сторонами настоящего Договора;

3.2.2. Сумма гарантированного минимума, полученная Правообладателем по настоящему Договору, относится к расходам Компании, учитываемым при начислении платежей роялти по настоящему Договору.

3.3. Платежи роялти начисляются Компанией в размере 25% (Двадцать пять процентов) от дохода Компании.

Доходом Компании считаются все суммы, полученные Компанией от реализации Товаров или от предоставления сублицензий по настоящему Договору третьим лицам, уменьшенные на расходы Компании по использованию полученных по настоящему Договору прав (в т.ч. расходы на рекламу Товаров, получение необходимых разрешений,все судебные расходы, указанные в п.2.3 настоящего Договора, а

discretion. At its own discretion, the Company shall also be entitled to set the maximum number of uses with regards to intellectual property rights for sublicensees, as it deems necessary.

2.2.5. The Company shall independently and at its own expense be responsible for all costs associated with the implementation of the rights obtained hereunder, unless the present Contract expressly provides otherwise.

2.2.6. Annually, within 20 business days following the reporting year, the Company shall provide the Copyright Holder with the Report about the procedure of using the rights received hereunder with an indication of income and expenditures of the Company for the reporting year, as well as the accrual of royalty payments.

2.3. The Company and/or authorized representatives shall be entitled to prevent the use of the Characters by third parties violating exclusive rights (exclusive license) received by the Company hereunder, including through pursuing litigation in the judicial authorities. In this case, all legal costs and expenses shall be incurred by the Company. Such expenses shall be considered as expenses of the Company for the use of the rights obtained hereunder and shall be recognized as costs when calculating the amounts of the royalty payments hereunder.

### 3. PAYMENT PROCEDURE

3.1. Fees to the Copyright Holder for granting the Licenses hereunder consists of the guaranteed minimum in the amount of USD 20,000 (twenty thousand) and royalty payments.

3.2. The amount of the guaranteed minimum shall be paid by the Company according to the following procedure:

3.2.1. The whole amount of USD 20,000 (twenty thousand) shall be paid within ten days from the date of signing by the Parties hereof;

3.2.2. The amount of the guaranteed minimum received by the Copyright Holder hereunder shall be related to the Company's expenses recognized when calculating royalty payments hereunder.

3.3. Royalty payments shall be accrued by the Company in the amount of 25% (twenty five percent) of the Company's revenue.

The Company's revenues shall be considered as all amounts received by the Company from the sale of the Goods or from granting sublicenses hereunder to third parties, reduced by the expenses of the Company for using the rights obtained hereunder (including advertising costs of the Goods, obtaining the required permits, all legal costs and expenses referred to in paragraph 2.3 hereof, as well as the guaranteed minimum paid hereunder).

5

также выплаченный по настоящему договору гарантированный минимум).

3.4. Сумма начисленных платежей роялти отражается в ежегодных Отчётах Компании. Выплаты производятся Компанией в течение месяца после представления Правообладателю соответствующего Отчёта на расчётный счёт, указанный в Реквизитах Правообладателя в настоящем Договоре.

3.5. Никаких других отчислений и платежей за использование полученных по Договору прав использования Компания и/или уполномоченные ею лица Правообладателю не производят и производить не будут.

3.6. Датой оплаты считается поступление средств на расчетный счет Правообладателя. Уплата налогов и иных обязательных платежей осуществляется каждой Стороной самостоятельно.


### 4. ГАРАНТИИ СТОРОН

4.1. Заключая настоящий Договор, Стороны заявляют и гарантируют, что они имеют все права и полномочия, необходимые для заключения и надлежащего исполнения настоящего Договора, не имеют по этому поводу исков и/или претензий со стороны третьих лиц и урегулируют их самостоятельно и за свой счет в случае возникновения в будущем.

4.2. Правообладатель гарантирует, что он является законным обладателем авторских прав, передаваемых Компании по настоящему Договору, что данные права свободны от каких-либо обязательств перед третьими лицами и не обременены ими и что не существует в настоящее время и не будет существовать каких-либо заключенных Правообладателем договоров, соглашений, лицензий, разрешений, обязательств и т.д., препятствующих Компании и/или уполномоченным ею лицам использовать Персонажи в соответствии с настоящим Договором.

Правообладатель гарантирует, что никакие иные объекты прав, предоставленные по настоящему Договору, не нарушают чьих-либо законных прав и интересов, как-то: авторских и/или смежных прав, патентных прав, прав на торговую марку и/или товарный знак, прав собственности и т.п., а также не наносят ущерба чьим-либо чести и достоинству, деловой репутации.

4.3. Компания гарантирует, что при использовании Произведений не будет нарушать сроков, способов и территории использования, предусмотренных ст.1 настоящего Договора.


### 5. ОТВЕТСТВЕННОСТЬ СТОРОН

5.1. Сторона, не исполнившая или ненадлежащим образом исполнившая обязательства по настоящему

3.4. The amount of royalty payments accrued shall be reflected in the annual Reports of the Company. Payments shall be made by the Company within one month after submission to the Copyright Holder of the Report to the settlement account specified in the Bank Details of the Copyright Holder herein.

3.5. No other royalties and payments for the use of the rights hereunder shall be made or will be made by the Company and/or its authorized representatives to the Copyright Holder.

3.6. The date of payment shall be the date of receipt of the funds to the settlement account of the Copyright Holder. Payment of taxes and other mandatory payments shall be carried out by each Party independently.


### 4. REPRESENTATIONS AND WARRANTIES OF THE PARTIES

4.1. By entering into the present Contract, the Parties represent and warrant that they possess all the rights and powers necessary for the conclusion and proper execution hereof, do not have any complaints and/or claims from third parties for this reason and will resolve any possible disputes on their own and at their own expense.

4.2. The Copyright Holder guarantees that it is the legitimate copyright holder provided to the Company hereunder, that these rights are free of any obligations to third parties and not burdened by them, and that there are or will be no contracts, agreements, licenses, permits, obligations, etc. concluded by the Copyright Holder preventing the Company and/or its authorized representatives to use the Characters in accordance herewith.

The Copyright Holder guarantees that no other objects of titles granted hereunder do not violate anyone's legitimate rights and interests, such as copyright and/or related rights, patent rights, trademark rights and/or brand name rights, property rights, etc., and not prejudice anyone's honor and dignity, or business reputation.

4.3. The Company guarantees that it will not violate the terms, methods and territory intended for use of the Animated Films or the Characters, as stipulated in paragraph 1 hereof.


### 5. LIABILITY OF THE PARTIES

5.1. The Party failing to perform or improperly performed its obligations hereunder shall compensate

6

Договору, обязана возместить другой стороне причиненные этим убытки при условии их документального подтверждения. Если сторона, нарушившая настоящий Договор, получила вследствие этого доходы, сторона, права которой нарушены, вправе требовать возмещения наряду с другими убытками упущенной выгоды в размере не меньшем, чем такие доходы.

5.2. В каждом случае нарушения Компанией хотя бы одного из обязательств, предусмотренных любым из п.п. 2.2.3, 4.3 настоящего Договора Компания выплачивает Правообладателю штраф в размере 10 000 (Десять тысяч) долларов США в отношении каждого из Персонажей, а также полностью возмещает причиненные Правообладателю убытки.

5.3. В случае невыполнения и/или ненадлежащего выполнения Компанией предусмотренных настоящим Договором обязательств по выплате вознаграждения Компания выплачивает Правообладателю штраф в размере 0,1 % от суммы платежа за каждый день просрочки.

5.4. В каждом случае нарушения Правообладателем любого из своих обязательств, оговоренных в п. 2.1.2 настоящего Договора, Правообладатель обязан уплатить Компании или уполномоченным лицам, права которых будут нарушены (по выбору Компании), штраф в размере 10 000 (Десять тысяч) долларов США за каждый Персонаж, в отношении которого допущено такое нарушение, а также возместить Компании и уполномоченным лицам все документально подтвержденные убытки (включая упущенную выгоду), причиненные в результате этого нарушения.

5.5. В случае, если вступившим в законную силу решением суда соответствующей юрисдикции будет установлено отсутствие у Правообладателя исключительного права на использование Персонажа способами, предусмотренными п.1.2. настоящего Договора, и/или иных прав, переданных Компании по настоящему Договору, Компания имеет право в одностороннем порядке отказаться от исполнения настоящего Договора в отношении этого Персонажа и/или иного объекта или от исполнения настоящего Договора в целом и расторгнуть настоящий Договор в одностороннем порядке путем направления Правообладателю соответствующего письменного уведомления в части, касающейся данного Персонажа и/или соответствующего объекта или полностью без выплаты Правообладателю каких-либо неустоек, компенсаций, возмещения убытков и пр., а также взыскать причиненные таким расторжением убытки (включая упущенную выгоду) и выплаченное Правообладателю вознаграждение.

## 6. КОНФИДЕНЦИАЛЬНОСТЬ

6.1. Финансовые условия настоящего Договора, а

the other Party for the damages incurred, provided the documentary confirmation of such damages. If the Party, which has violated the terms hereof, received any income as a result of such violation, the damaged Party which rights were violated shall be entitled to demand compensation related to the loss of profits along with other losses in the amount not smaller than such incomes.

5.2. In each case of violation by the Company of at least one of its obligations under paragraphs 2.2.3 or 4.3 hereof, the Company shall pay a penalty to the Copyright Holder in the amount of USD 10,000 (ten thousand) in respect of each Character, as well as shall fully reimburse the damages incurred by the Copyright Holder.

5.3. In case of failure to fulfill and/or improper fulfillment by the Company hereunder of its obligations to pay fees, the Company shall pay a penalty to the Copyright Holder in the amount of 0.1% of the amount of payment for each day of delay.

5.4. In each case of a violation by the Copyright Holder of any of its obligations stipulated in paragraph 2.1.2 hereof, the Copyright Holder shall pay a penalty to the Company or the authorized representatives whose rights are violated (at the Company's choice) in the amount of USD 10,000 (ten thousand) for each Character in respect of which such violation was in place. In addition, the Copyright Holder shall reimburse the Company and its authorized representatives for all documented losses (including loss of profits) caused as a result of such violation.

5.5. In case it will be established in accordance with an enforceable decision of the court of the relevant jurisdiction that the Copyright Holder has no exclusive right to use the Character by the ways specified in paragraph 1.2. hereof, and/or other rights transferred to the Company hereunder, the Company shall be entitled to unilaterally withdraw from execution hereof in respect of such Character and/or other object or from execution hereof as a whole and to terminate the present Contract unilaterally by submitting a written notification to the Copyright Holder in respect of such Character and/or the respective object, or to terminate the present Contract in full without payment to the Copyright Holder of any penalties, compensations, damages etc., as well as to recover losses or damages caused by such termination (including loss of profits) and the amount of fees paid to the Copyright Holder.

## 6. CONFIDENTIALITY

6.1. The financial terms hereof, as well as all

7

также вся производственная, финансовая, коммерческая и иная информация, предоставляемая Сторонами друг другу в процессе исполнения настоящего Договора, являются конфиденциальной информацией. Стороны примут все меры, чтобы предохранить конфиденциальную информацию от разглашения. Передача конфиденциальной информации третьим лицам (за исключением приглашенных сторонами адвокатов, аудиторов, консультантов), опубликование и иное разглашение возможно лишь с письменного разрешения Стороны, ее предоставившей, а также в случаях, предусмотренных законодательством.

## 7. РАЗРЕШЕНИЕ СПОРОВ

7.1. Все споры и разногласия, которые могут возникнуть между сторонами по вопросам, не нашедшим своего разрешения в тексте настоящего Договора, а также все вопросы, прямо неурегулированные настоящим Договором, будут разрешаться путем направления претензий. Срок ответа на претензию – 20 (двадцать дней) с момента получения.

7.2. В случае отсутствия ответа и/или недостижения согласия по спорным вопросам в течение указанного срока, споры передаются на рассмотрение арбитражного суда г.Нью-Йорка (США). и разрешаются на основе норм права штата Нью-Йорк.

## 8. СРОК ДЕЙСТВИЯ ДОГОВОРА

8.1. Настоящий договор признается заключенным и вступает в силу с даты его подписания Сторонами, указанной на первой странице настоящего Договора, и действует по «31» августа 2021 года.

8.2. Финансовые обязательства Сторон, а также обязанности Компании по предоставлению Отчётов остаются в силе до их надлежащего исполнения.

8.3. В течение семи месяцев с момента окончания срока действия настоящего договора, а также в течение трёх месяцев в случае расторжения настоящего Договора по соглашению Сторон или из-за нарушения Компанией условий договора, Компания, после подписания Сторонами соответствующего соглашения, будет иметь неисключительное право распространения остатков Продукции, изготовленной Компанией в соответствии с настоящим Договором, с обязательными выплатами роялти, согласно условиям настоящего Договора. В соглашении Стороны установят количество остатков Продукции и сроки платежей роялти за неё.

## 9.ОБСТОЯТЕЛЬСТВА НЕПРЕОДОЛИМОЙ СИЛЫ

production, financial, commercial and other information provided by the Parties to each other during the execution hereof shall be confidential. The Parties shall take all efforts to protect confidential information from disclosure. Submission of confidential information to third parties (with the exception of the lawyers, auditors or advisors invited by the Parties), making such information publicly available or other disclosure of such information shall be possible only with the written authorization of the respective Party, which provided such confidential information, as well as in cases stipulated by the applicable legislation.

## 7. DISPUTE RESOLUTION

7.1. All disputes and disagreements that may arise between the Parties on the issues that failed to be resolved in the text hereof, as well as on all issues directly not regulated hereby shall be resolved by submitting the respective claims. The response time to such claim shall be 20 (twenty) days from the date of its receipt.

7.2. In case of the absence of a response and/or failure to reach an agreement on a matter of issue within a specified period, disputes shall be referred to the arbitration court of New York (USA) and resolved based on the applicable legislation of the state of New York (USA).

## 8. TERM OF THE CONTRACT

8.1. The present Contract shall be deemed concluded and shall enter into force on the date of its signing by the Parties specified on the first page hereof, and shall be valid until August 31, 2021.

8.2. Financial obligations of the Parties, as well as the Company's obligations to provide the corresponding Reports shall remain in force until their proper execution.

8.3. Within seven months from the date of expiry hereof, as well as within three months in case of termination hereof by an agreement of the Parties or due to breach by the Company of the terms hereof, the Company shall be entitled after signing the relevant agreement by the Parties to have the non-exclusive right of distributing residual stock of the Goods manufactured by the Company in accordance herewith, with a mandatory royalty payments under the terms hereof. The Parties shall determine the amount of residual stock of the Goods and agree on the terms of royalty payments for such residual stock.

## 9. FORCE MAJEURE

8

9.1. Стороны освобождаются от ответственности за частичное или полное неисполнение обязательств по настоящему Договору, если оно явилось следствием обстоятельств непреодолимой силы, возникших после заключения настоящего Договора.

К таким обстоятельствам в контексте настоящего Договора относятся стихийные бедствия, военные действия, введение чрезвычайного положения, акты террора, массовые беспорядки, если такие обстоятельства непосредственно препятствуют исполнению Сторонами своих обязательств.

Факт наступления таких обстоятельств и их продолжительность должны быть подтверждены Торгово-промышленной палатой РФ или США и любой из стран Территории либо иным компетентным органом

9.2. Сторона, исполнению обязательств которой препятствуют вышеуказанные обстоятельства, обязана в письменной форме уведомить другую Сторону об этом в течение 10 (десяти) дней со дня их наступления. В противном случае Сторона, ссылающаяся на обстоятельства непреодолимой силы, освобождается от ответственности за неисполнение своих обязательств по настоящему Договору только с даты уведомления.

## 10. РАСТОРЖЕНИЕ ДОГОВОРА

10.1. Стороны вправе досрочно расторгнуть настоящий Договор по взаимному письменному соглашению.

## 11. ЗАКЛЮЧИТЕЛЬНЫЕ ПОЛОЖЕНИЯ

11.1. Любые изменения и дополнения к настоящему Договору имеют юридическую силу и являются неотъемлемой частью настоящего Договора, если они совершены в письменной форме и подписаны полномочными представителями обеих Сторон. Недействительность отдельных положений настоящего Договора не влечет недействительности прочих его частей.

11.2. В случае реорганизации Правообладателя его права и обязанности по настоящему Договору переходят к правопреемникам. В случае ликвидации Правообладателя Компания (в т.ч. уполномоченные лица) сохраняют в полном объеме все передаваемые Компании по настоящему Договору права и разрешения, включая имущественные (в т.ч. исключительные) права (лицензии).

11.3. С момента даты подписания настоящего Договора, указанной на первой странице настоящего Договора, все предшествующие документы и переписка между Сторонами по предмету Договора утрачивают силу.

9.1. The Parties shall be relieved from responsibility for partial or complete failure to fulfill obligations hereunder if it was caused by force majeure arising after the conclusion hereof.

Such circumstances in the context hereof include natural disasters, acts of war, state of emergency, acts of terrorism, riots, if such circumstances directly hamper the performance by the Parties of their obligations hereunder.

The fact of occurrence of such circumstances and their duration shall be confirmed by the Chamber of Commerce and Industry of the Russian Federation or the United States and any country on the Territory or other competent authority.

9.2. The Party, which is hampered to fulfill its obligation hereunder by the above circumstances, shall notify the other Party in writing within 10 (ten) days from the date of their occurrence. Otherwise, the Party, which refers to force majeure, shall be exempt from liability for failure to perform its obligations hereunder only from the date of notification.

## 10. TERMINATION OF THE CONTRACT

10.1. The Parties shall be entitled to terminate the present Contract by mutual written agreement.

## 11. FINAL PROVISIONS

11.1. Any changes or additions hereto shall be legally binding and shall be an integral part hereof if done in writing and signed by the authorized representatives of both Parties. Invalidity of individual provisions hereof shall not entail invalidity of its other provisions.

11.2. In case of reorganization of the Copyright Holder, its rights and obligations hereunder shall be transferred to the successors. In case of liquidation of the Copyright Holder, the Company (including its authorized representatives) shall retain in full all rights and permissions transferred to the Company hereunder, including property (including exclusive) rights (licenses).

11.3. From the date of signing hereof specified on the first page hereof, all prior documents and correspondence between the Parties on the subject matter hereof shall become void.

11.4. The present Contract is made in two copies in Russian and English, having equal legal force, one copy – for the Copyright Holder, and another copy – for the Company.

9

11.4. Настоящий Договор составлен в двух экземплярах на русском и английском языках, имеющих равную юридическую силу, из которых один экземпляр находится у Правообладателя, второй - у Компании.

11.5. Стороны обязаны уведомлять друг друга в трехдневный срок об изменении адресов, банковских реквизитов. В противном случае направление корреспонденции на прежний адрес считается надлежащим извещением соответствующей Стороны.

11.5. The Parties shall notify each other within three days on any change of their addresses or bank details. Otherwise, submission of correspondence to the previous address shall be considered as the proper notification of the Party concerned.

## 12. АДРЕСА И БАНКОВСКИЕ РЕКВИЗИТЫ СТОРОН

## 12. BANK DETAILS AND SIGNATURES OF THE PARTIES

### ПРАВООБЛАДАТЕЛЬ:
Федеральное государственное унитарное предприятие «Творческо-производственное объединение «Киностудия «**Союзмультфильм**»
Адрес местонахождения: 127006, г. Москва, ул. Долгоруковская, д.23а
Фактический адрес: 27006, г. Москва,ул. Долгоруковская, д.25
  account # 40502978038050000093
  SWIFT – код          SABRRUMM
  Наименование банка SBERBANK
  Город, страна          MOSCOW, RUSSIA
  Банки-корреспонденты:
  в долларах США
  account# 40502840238001000022
  SWIFT – код          BKTRUS33
  Наименование банка    Deutsche Bank Trust
  Company Americas
  Город, страна          New York, USA
  Номер корр. Счета      04403077
  Тел.:  8 (499) 978-43-69
  E-mail: info@souzmult.ru

**ДИРЕКТОР**_____ /Давыдов Г.Б./

                          /Stamp here/

### КОМПАНИЯ:
**LaRubInt Corp**
9281 Shore Rd. Ste. 204 Brooklyn NY 11209 USA
Laila Rubstein +1.646.435.1111
laila_rubstein@yahoo.com
WIRE CITIBANK
330 MADISON AVENUE NEW YORK NY 10017 USA
LARUBINT, CORP. ABA# 021000089
ACCOUNT# 4998104273
SWIFT CITIUS33

**ПРЕЗИДЕНТ**_____ /Ляля Рубштейн/

                          /Stamp here/

### THE COPYRIGHT HOLDER:
Federal State Unitary Enterprise "Creative and Production studio "**Soyuzmultfilm**",

Legal address: 23a Dolgorukovskaya str., 127006, Moscow
Actual address: 25 Dolgorukovskaya str., 127006, Moscow
  account # 40502978038050000093
  SWIFT –                SABRRUMM
  Bank Name              SBERBANK
  City, Country          MOSCOW, RUSSIA
  Correspondent bank:
  Currency: USA Dollars
  account# 40502840238001000022
  SWIFT                  BKTRUS33
  Bank Name              Deutsche Bank Trust
  Company Americas
  City, Country          New York, USA
  Correspondent Account# 04403077
  Tel.:  7 (499) 978-43-69
  E-mail: info@souzmult.ru

**DIRECTOR**_____ /Davydov G.B./

                          /Stamp here/

### THE COMPANY:
**LaRubInt Corp**
9281 Shore Rd. Ste. 204 Brooklyn NY 11209 USA
Laila Rubstein +1.646.435.1111
laila_rubstein@yahoo.com
WIRE CITIBANK
330 MADISON AVENUE NEW YORK NY 10017 USA LARUBINT, CORP. ABA# 021000089
ACCOUNT# 4998104273
SWIFT CITIUS33

**PRESIDENT**_____ /Laila Rubstein/

                          /Stamp here/

10

# **<u>EXHIBIT 4</u>**

| | |
|---|---|
| *ДОПОЛНИТЕЛЬНОЕ СОГЛАШЕНИЕ* | *SUPPLEMENTARY AGREEMENT* |
| *к договору № 18/16 от «18» августа 2016 года* | to the Contract No. 18/16 dated August 18, 2016 |
| г. Москва          «19» сентября 2016 г. | Moscow, RF          September "19", 2016 |

Федеральное государственное унитарное предприятие «Творческо-производственное объединение «Киностудия «Союзмультфильм», именуемое в дальнейшем «Правообладатель», в лице и.о.директора Давыдова Г.Б., действующего на основании Устава, с одной стороны, и

LaRubInt, Corp. - американская компания, зарегистрированная по адресу 9281 Shore Rd. Ste. 204 Brooklyn NY 11209 USA, (именуемое в дальнейшем «Компания»), в лице President of LaRubInt, Corp. Ляли Рубштейн, с другой стороны, (далее также совместно именуемые «Стороны», а по отдельности – «Сторона»), заключили настоящее Дополнительное соглашение к договору № 18/16 от «18» августа 2016 года (далее по тексту – «Договор»), о нижеследующем:

1. Стороны договорились продлить срок действия предоставленных по Договору лицензий, в связи с чем пункт 1.5 Договора изложить в следующей редакции:

*1.5. Лицензии на использование Персонажей по настоящему Договору предоставлены Компании на срок с «01» сентября 2016 года (Первое сентября две тысячи шестнадцатого года) по 31 августа 2033 года (Тридцать первое августа две тысячи тридцать третьего года) включительно.»*

1.1 Стороны договорились увеличить срок действия Договора, в связи с чем пункт 8.1 Договора изложить в следующей редакции:

*«8.1. Настоящий договор признается заключенным и вступает в силу с даты его подписания Сторонами, указанной на первой странице настоящего Договора, и действует по «31» августа 2033 года включительно.»*

2. Остальные условия Договора остаются без изменения.

---

Federal State Unitary Enterprise "Creative and Production studio "Soyuzmultfilm", hereinafter referred to as "the Intellectual Property Owner", represented by Acting Director Davydov G.B., acting under the Charter, on the one part, and

LaRubInt, Corp., an American company registered at the following address: 9281 Shore Rd. Ste. 204 Brooklyn NY 11209 USA (hereinafter referred to as "the Company"), represented by the President of LaRubInt, Corp. Laila Rubstein, on the other part (hereinafter collectively referred to as "the Parties" and individually referred to as "the Party"), have concluded the present Supplementary Agreement to the Contract No. 18/16 dated August 18, 2016 (hereinafter referred to as "the Agreement"), as follows:

1. The Parties agreed to extend the term of the licenses provided under the Contract, in connection with which paragraph 1.5 of the Contract shall be amended to read as follows:

*"1.5. Licenses to use the Characters hereunder are provided to the Company for the period from September 01, 2016 (the first of September two thousand and sixteen) through August 31, 2033 (the thirty first of August two thousand and thirty three)."*

1.1 The Parties agreed to increase the term of the Contract, in connection with which paragraph 8.1 of the Contract shall be amended to read as follows:

*"8.1. The present Contract shall be deemed concluded and shall enter into force on the date of its signing by the Parties specified on the first page hereof, and shall be valid through August 31, 2033."*

2. Other terms of the Contract shall remain unchanged.

3. Настоящее Дополнительное соглашение является неотъемлемой частью Договора.

4. Настоящее Дополнительное соглашение вступает в силу с момента его подписания Сторонами.

5. Настоящее Дополнительное соглашение составлено и подписано Сторонами в двух экземплярах на русском и английском языках, имеющих равную юридическую силу, из которых один экземпляр находится у Правообладателя, второй - у Компании.

3. This Supplementary Agreement is an integral part of the Contract.

4. This Supplementary Agreement shall enter into force upon signatures by the Parties.

5. This Supplementary Agreement is made and signed by the Parties in two copies in Russian and English languages with equal legal force, one copy of which is at the Right holder, the second - the Company.

### ПОДПИСИ СТОРОН:

**ПРАВООБЛАДАТЕЛЬ:**
Федеральное государственное унитарное предприятие «Творческо-производственное объединение «Киностудия «**Союзмультфильм**»

ДИРЕКТОР _____ /Давыдов Г.Б./

/Stamp here/

**КОМПАНИЯ:**
LaRubIat Corp

ПРЕЗИДЕНТ _____ /Ляля Рубштейн/

/Stamp here/

### SIGNATURES OF THE PARTIES

**THE COPYRIGHT HOLDER:**
Federal State Unitary Enterprise "Creative and Production studio "**Soyuzmultfilm**".

DIRECTOR _____ /Davydov G.B./

/Stamp here/

**THE COMPANY:**
LaRubInt Corp

PRESIDENT _____ /Laila Rubstein/

/Stamp here/

2