UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LARUBINT CORP.,<br>　　　　　　　　Plaintiff,<br>　　　　v.<br>JOINT STOCK COMPANY STUDIO SOYUZMULTFILM,<br>　　　　　　　　Defendant. | **MEMORANDUM & ORDER**<br>22-CV-4461 (HG) |

**HECTOR GONZALEZ**, United States District Judge:

　　Plaintiff LaRubInt Corp. brings this action pursuant to 28 U.S.C. § 1332 against Defendant Joint Stock Company Soyuzmultfilm for breach of contract and unjust enrichment. ECF No. 1 ¶¶ 27–28. Presently before the Court is Defendant's motion to compel arbitration and dismiss or stay the action ("Motion to Compel"). ECF No. 12. For the reasons set forth below, the Court denies the Motion to Compel.

## BACKGROUND

　　In August and September 2016, Plaintiff, a U.S. media marketing company, entered into three licensing agreements ("Licensing Agreements") with Defendant, a Russian film studio. The Licensing Agreements were negotiated by Plaintiff's president and Defendant's representatives, all of whom are native Russian speakers. ECF No. 15 (Declaration of Laila Rubstein); ECF No. 17-1 (Certification of Gleb B. Davydov). Plaintiff alleges that the terms of the Licensing Agreements gave Plaintiff the "exclusive right, in the defined territories of East and Southeast Asia, India, the United States, and Canada, to broadly use and market images, goods and services" related to animated characters from Defendant's animated series. ECF No. 1 ¶ 1. Plaintiff contends that Defendant breached its contracts with Plaintiff when it allowed a prior licensee in Japan to use and market the same set of animated characters. *Id.* ¶ 2. Plaintiff

alleges that it has been irreparably injured due to Defendant's actions, including its failure to support Plaintiff's efforts to enforce its allegedly exclusive license. *Id.* ¶ 3.

On July 28, 2022, Plaintiff filed this action asserting breach of contract and unjust enrichment claims. *Id.* ¶¶ 27–28. On November 18, 2022, Defendant filed the Motion to Compel contending that the Licensing Agreements contain arbitration clauses requiring Plaintiff and Defendant to "arbitrate all disputes and disagreements that may arise between [them]." ECF No. 12-1 at 10.

The Licensing Agreements are structured as side-by-side Russian and English versions, with each version having equal force.[1] *See* ECF No. 1 at 9–19 (Exhibit 1, Contract No. 18/16); ECF No. 1 at 20–30 (Exhibit 2, Contract No. 23/16); ECF No. 1 at 31–41 (Exhibit 3, Contract No. 27/16). Each agreement contains an identical dispute resolution provision—Article 7—which provides that:

| 7. РАЗРЕШЕНИЕ СПОРОВ | 7. DISPUTE RESOLUTION |
|---|---|
| 7.1. Все споры и разногласия, которые могут возникнуть между сторонами по вопросам, не нашедшим своего разрешения в тексте настоящего Договора, а также все вопросы, прямо неурегулированные настоящим Договором, будут разрешаться путем направления претензий. Срок ответа на претензию – 20 (двадцать дней) с момента получения. | 7.1. All disputes and disagreements that may arise between the Parties on the issues that failed to be resolved in the text hereof, as well as on all issues directly not regulated hereby shall be resolved by submitting the respective claims. The response time to such claim shall be 20 (twenty) days from the date of its receipt. |
| 7.2. В случае отсутствия ответа и/или недостижения согласия по спорным вопросам в течение указанного срока, споры передаются на рассмотрение арбитражного суда г.Нью-Йорка (США). и разрешаются на основе норм права штата Нью-Йорк. | 7.2. In case of the absence of a response and/or failure to reach an agreement on a matter of issue within a specified period, disputes shall be referred to the arbitration court of New York (USA) and resolved based on the applicable legislation of the state of New York (USA). |

---

[1]   The parties dispute who drafted the Licensing Agreements and whether they were drafted in English or Russian first. Plaintiff contends that the negotiations were conducted "almost entirely in Russian" and that the Licensing Agreements were drafted "entirely by [Defendant's] representatives." ECF No. 15 ¶ 3. Defendant contends that the Licensing Agreements were prepared by Plaintiff in English and then translated into Russian, and "[n]o changes were made by [Defendant] during the approval process." ECF No. 17-1 at 3.

2

Defendant argues, among other things, that based on this provision, the Court should compel arbitration. ECF No. 12 at 6–9. On December 21, 2022, Plaintiff filed its opposition, ECF No. 14, and on December 28, 2022, Defendant filed its reply, ECF No. 17.

## **LEGAL STANDARD**

"A court deciding a motion to compel arbitration applies a standard similar to that applicable for a motion for summary judgment." *Herskovic v. Verizon Wireless*, No. 19-cv-3372, 2020 WL 1083716, at *2 (E.D.N.Y. Mar. 6, 2020).[2] Summary judgment is appropriate only where "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Herskovic*, 2020 WL 1083716, at *2 ("The Court considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, and draws all reasonable inferences in favor of the non-moving party."). Accordingly, "[o]n a motion to compel arbitration, the moving party has the initial burden of showing that an agreement to arbitrate exists." *Carvant Fin. LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d. 390, 395 (E.D.N.Y. 2013). The court must then undertake a two-step inquiry: it "must first determine whether there is a valid agreement to arbitrate between the parties. If there is, the Court must then determine whether the particular dispute falls within the scope of [the] arbitration clause." *Id.* A valid agreement to arbitrate "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

---

[2]   Unless noted, case law quotations in this order accept all alterations and omit all internal quotation marks, citations, and footnotes.

dispute. Doubts should be resolved in favor of coverage." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015).

## DISCUSSION

Defendant argues that the dispute resolution provision in the Licensing Agreements—identical in all three contracts—was drafted in English and requires the Court to compel arbitration. ECF No. 17 at 6; *see* ECF No. 1 at 17, 28, 39 ("[D]isputes shall be referred to the arbitration court of New York (USA)."). Plaintiff contends that the Licensing Agreements were drafted in Russian, and that Defendant misinterprets or misunderstands the translated term "arbitration court" because an "arbitration court (also known as 'arbitrazh' court) is the name applied to Russian civil law courts with jurisdiction over commercial matters." ECF No. 14 at 1. In other words, Plaintiff argues that the "forum the parties agreed upon – 'арбитражного суда' in Russian; 'arbitration court' in English" is not a private arbitration tribunal, but rather a commercial court akin to federal or state courts in the United States. *Id.* at 3. Defendant does not dispute the meaning of "arbitrazh" in the Russian versions of the Licensing Agreements, but instead argues that the English versions are operative and that the English meaning is controlling because the parties signed both versions of the Licensing Agreements. ECF No. 17 at 5–7.

The Court finds that Defendant has not met its "burden of showing that an agreement to arbitrate exists" and finds that the dispute resolution provision in the Licensing Agreements is not an arbitration clause. *Carvant Fin. LLC*, 958 F. Supp. 2d. at 395. First, several facts suggest that the Licensing Agreements were, at a minimum, approved in Russian, and therefore the Russian meaning of "arbitrazh" should govern: (i) Defendant is a Russian entity, ECF No. 12-1 at 5; (ii) both Plaintiff and Defendant are native Russian speakers, ECF No. 15 at 1; (iii) the declaration submitted by Defendant's former acting director in support of the Motion to Compel

was written in Russian and needed to be translated into English, ECF No. 17-1 at 2; and (iv) Defendant itself agrees that the dispute resolution provision in the English versions of the Licensing Agreements is "awkward,"  ECF No. 12-1 at 12 ("[T]he arbitration clause may be awkward, presumably because the Licensing Agreements were translated in English and Russian. . . .").  While the parties now dispute whether the Licensing Agreements were drafted in English or Russian first, *see supra* n.1, Defendant's former acting director states that he was responsible for "signing key license agreements, including those providing rights to cartoon characters" and he is a Russian speaker.  ECF No. 17-1 at 3.

Second, irrespective of which version was drafted or approved first, the parties do not dispute that the English and Russian versions of the Licensing Agreements have "equal force."  *See* ECF No. 1 at 18, 29, 40 ("The present Contract is made in two copies in Russian and English, having equal force. . . .").  In the Russian version, the dispute resolution provision indisputably refers to "арбитражного суда" or "arbitrazh courts," a term of art which both parties agree does *not* mean private arbitral courts or arbitration tribunals, but rather commercial courts.  *See*, *e.g.*, *United States v. All Assets Helds at Bank Julius Baer & Co., Ltd.*, 772 F. Supp. 2d 205, 217 n.10 (D.D.C. 2011) ("The Arbitrazh court system consists of city or regional trial-level courts throughout the Russian Federation, as well as appellate circuit courts and the Supreme Arbitrazh Court.  The Arbitrazh trial courts hear cases involving business disputes, banking, tax, bankruptcy, and corporate governance.  Such cases may arise from disputes between business entities or between business entities and the state.").³  Thus, it is clear that in

---

³        *See also* Stephen G. Vaskov et al, *Overview of Russian Arbitration § 150.10. Court system*, 5 L. of Int'l Trade § 150.10 (2023) ("The judicial system of the Russian Federation consists of two types of courts:  courts of general jurisdiction . . . and arbitrazh courts. . . . Because of the similarity between the words 'arbitrazh' and 'arbitration,' the arbitrazh courts

the Russian versions of the Licensing Agreements the parties intended for disputes to be resolved in the equivalent of "commercial courts" in New York, and not in private arbitration.

In contrast, the language in the English versions of the Licensing Agreements is imprecise. The dispute resolution provision provides that "disputes shall be referred to the arbitration court of New York (USA)." ECF No. 1 at 17, 28, 39. The Court is not aware of, and Defendant has failed to show the existence of such a thing as "the arbitration court of New York." Moreover, the dispute resolution provision does not identify an arbitration forum and leaves the Court to speculate about: (i) whether the parties are meant to arbitrate with the American Arbitration Association, JAMS, the International Chamber of Commerce or another arbitration tribunal; (ii) whether the alleged arbitration provision is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16, or New York's Arbitration Law, N.Y. CPLR §§ 7501–7514; and (iii) which administrative rules govern the arbitration. Such details would be specified in a

---

often are referred to mistakenly as 'arbitration courts.' However, while the arbitrazh courts have jurisdiction over disputes between entities arising out of their commercial relationship that otherwise would fall within the scope of the International Arbitration Law if the parties had an arbitration agreement, they are not 'arbitration' courts. Instead, they are more accurately described as commercial courts."); Alexei Panich et al, *§ 65:2. Status and legislation*, 3 Int'l Execution Against Judgment Debtors § 65:2 (Ctr. for Int'l L. Stud., 2023) ("The word arbitrazh (which is a literal transcription from Russian) should not be confused with the word 'arbitration,' which means a procedure before an arbitral tribunal usually chosen by the parties to resolve a particular dispute on the basis of an arbitration agreement. The arbitrazh courts are not arbitral tribunals but form part of the state judiciary. Such courts are sometimes referred to in English as commercial courts."); Boris Brownstein, *Recognizing Civil RICO in Foreign Courts: Since They Came, Should We Build It?*, 35 Brooklyn J. Int'l L. 233, 257 (2010) ("[The Moscow Arbitrazh court] is a commercial court titled 'arbitrazh' that many non-Russian speakers confuse with commercial arbitration. The Russian term 'arbitrazh' is only an approximation and, therefore, a misleading translation of the English term arbitration. . . . [T]he only parallel between Russian arbitrazh and arbitration is that the two terms are homonymous.").

standard arbitration clause.[4]  Under New York law, an agreement to arbitrate "must be clear, explicit and unequivocal and must not depend upon implication or subtlety." *Indus. Window Corp. v. Fed. Ins. Co.*, 565 F. Supp. 2d 513, 517 (S.D.N.Y. 2008).  Here, while the Russian version of the dispute resolution provision is clear that the disputes should be resolved in "commercial courts," the English version is—using Defendant's own description—"awkward." ECF No. 12-1 at 12.

Given that both parties are native Russian speakers, that the English and Russian versions of the Licensing Agreements have "equal force," ECF No. 1 at 18, 29, 40, that the English version of the Licensing Agreements is either poorly drafted or translated, and that the Court is required to "draw[] all reasonable inferences in favor of the non-moving party," *Herskovic*, 2020 WL 1083716, at *2, the Court finds that Defendant has not met its "burden of showing that an agreement to arbitrate exists." *Carvant Fin. LLC*, 958 F. Supp. 2d. at 395.  Because the Court finds that a valid arbitration agreement does not exist, the presumption in favor of arbitration is inapplicable.  *See Holick*, 802 F.3d at 395 (describing presumption of arbitrability once burden of showing valid agreement to arbitrate is overcome).

---

[4] *See, e.g.*, American Arbitration Association, "Standard Arbitration Clause," https://www.adr.org/Clauses (last visited April 20, 2023) ("Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof."); International Chamber of Commerce, "Standard ICC Arbitration Clauses (English version)," https://iccwbo.org/news-publications/arbitration-adr-rules-and-tools/standard-icc-arbitration-clauses-english-version/ (last visited April 20, 2023) ("All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules.").

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Compel Arbitration is DENIED.

SO ORDERED.

                                              */s/ Hector Gonzalez*
                                              HECTOR GONZALEZ
                                              United States District Judge

Dated:  Brooklyn, New York
         April 20, 2023