UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LARUBINT CORP.,

               Plaintiff,

      v.

JOINT STOCK COMPANY STUDIO
SOYUZMULTFILM,

             Defendant.

**MEMORANDUM & ORDER**
22-CV-04461 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff LaRubInt Corp. ("LaRubInt" or the "Company") has brought this suit against Defendant Joint Stock Company Studio Soyuzmultfilm ("SMF" or the "Copyright Holder"), alleging breach of contract and unjust enrichment regarding three licensing agreements.  ECF No. 1 ¶¶ 27, 28 (Complaint).[1]  Plaintiff moves for summary judgment as to liability, but not damages, on all of its claims.  There are no cross-motions or motions for summary judgment on SMF's counterclaims.  For the reasons set forth below, Plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## PROCEDURAL HISTORY

Plaintiff filed its Complaint on July 28, 2022.  ECF No. 1.  On November 18, 2022, SMF filed a motion to compel arbitration and stay this action, ECF No. 12, which was denied on April 20, 2023, ECF No. 21.  On November 21, 2022, the Court directed SMF to answer the Complaint by December 12, 2022.  Nov. 21, 2022, Text Order.  SMF filed its Answer ("First Answer") nine days late, on December 21, 2022.  ECF No. 16.  The First Answer pled 18

---

[1]     The Court refers to the pages assigned by the Electronic Case Files system ("ECF"), except when quoting to deposition transcripts, where the Court cites to the original page number on the native document.  Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.

affirmative defenses. *Id.* at 5–9.  On February 3, 2023, SMF filed an amended Answer and brought counterclaims against LaRubInt ("Amended Answer and Counterclaims").  ECF No. 19. SMF's Amended Answer and Counterclaims pled 21 affirmative defenses and four counterclaims.  *Id.* at 5–10, 18–20.  LaRubInt responded to the Amended Answer and Counterclaims on February 23, 2023.  ECF No. 20.  On May 7, 2024, Plaintiff filed a pre-motion conference letter in advance of a proposed motion for summary judgment.  ECF No. 35 (Pre-motion Letter).  The summary judgment motion was fully briefed on August 14, 2024.[2]

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed.  LaRubInt is a New York corporation owned and operated by Laila Rubstein.  ECF No. 50-1 ¶ 1 (SMF's Rule 56.1 Counterstatement).  LaRubInt provides services related to licensing and distribution of audiovisual works worldwide, including placement of international television news channels in luxury hotels; licensing of documentary archives for film, television, and digital productions; and merchandising of animated characters.  *Id.* ¶ 2.  SMF is a Russian film studio, owned by the Russian Federal Government, organized and existing under the laws of the Russian Federation with its principal place of business in Moscow.  *Id.* ¶¶ 4–5.

### A.    *LaRubInt Licensing Agreements*

In August 2016, LaRubInt and SMF entered into three licensing agreements (the "Licensing Agreements" or "LAs") that gave LaRubInt an exclusive right to use certain animated characters, including "Gena the Crocodile," "Cheburashka," and "Shapoklyak" (collectively, the "Cheburashka Characters").  *Id.* ¶¶ 6, 7, 8.  Each agreement was negotiated

---

[2]    The motion papers consist of:  ECF No. 46 (Plaintiff's Notice of Motion); ECF No. 47 (Plaintiff's Memorandum of Law); ECF No. 48 (Plaintiff's Rule 56.1 Statement); ECF No. 49 (Plaintiff's Exhibits); ECF No. 50 (Defendant's Opposition, 56.1 Counterstatement, and Exhibits); ECF No. 53 (Plaintiff's Reply).

between and signed by Ms. Rubstein and Gleb Davydov, the executive with the highest-level

officer position at SMF ("Director Davydov"). *Id.* ¶ 13. The Licensing Agreements had nearly

identical terms; the only differences pertained to the territory covered by each.[3]

The scope of the licenses was broad and wide-ranging. From September 1, 2016, through

August 31, 2021, LaRubInt could use the Cheburashka Characters in any form, means, and type

of goods or products, with no limitation on advertising, marketing, or promotion. *Id.* ¶¶ 9, 10,

12. LaRubInt did not need to obtain SMF's consent for any particular use or design. *Id.* ¶ 10.

Although LaRubInt could freely transfer its rights, in whole or in part, to any third party, SMF

was prohibited from licensing the characters to third parties or using the Cheburashka Characters

within territories covered by the Licensing Agreements. *Id.* ¶ 11.

SMF represented that the licensed rights were free of any obligations to third parties and

that there were, and would continue to be, no other agreements preventing LaRubInt's exclusive

use of the characters. *Id.* ¶ 15. The Licensing Agreements contained a succession clause,

whereby the parties' rights and obligations would be transferred to their successors in case of

SMF's reorganization or liquidation. LAs at art. 11.2. And the parties agreed that for *each*

breach or violation by SMF, LaRubInt would be entitled to recover a $10,000 penalty for *each*

Cheburashka Character implicated, in addition to reimbursement of all documented losses

(including loss of profits) caused as a result of such violation(s). *Id.* at art. 5.4. In exchange for

---

[3]    The first licensing agreement, Contract No. 18/16 ("LA-1"), ECF No. 1 at 9–19, dated August 18, 2016, covered "the entire territory of Asia including but not limited to territories of the following countries: Japan, China (including Taiwan), Indonesia, South Korea, Thailand, Singapore and Malaysia." *Id.* at art. 1.6; ECF No. 50-1 ¶ 6. The second licensing agreement, Contract No. 23/16 ("LA-2"), ECF No. 1 at 20–30, dated August 24, 2016, covered "the entire territory of Asia including but not limited to . . . India." *Id.* at art. 1.6; ECF No. 50-1 ¶ 7. The third licensing agreement, Contract No. 27/16 ("LA-3"), ECF No. 1 at 31–41, dated August 30, 2016, covered "the entire territory of North America including but not limited to . . . USA and Canada." *Id.* at art. 1.6; ECF No. 50-1 ¶ 8.

these rights, LaRubInt paid SMF $20,000 for each agreement ($60,000 total).  *See* ECF No. 50-1

¶ 14.  LaRubInt also agreed to pay SMF a 25% annual royalty of LaRubInt's revenues, minus

expenses from the sale or use of the Cheburashka Characters.  *Id.*  "Expenses" explicitly include:

the $20,000 upfront payments, advertising costs, costs to obtain required permits, and all legal

costs and expenses.  *See* LAs at art. 3.3.

       B.    *CPLLP License*

Approximately one month after signing the Licensing Agreements, LaRubInt discovered

that another company, Cheburashka Project, LLP ("CPLLP"), was already selling Cheburashka

Characters merchandise in Japan and elsewhere.  *See id.* ¶ 17.  As it turned out, in 2005, SMF

had licensed the Cheburashka Characters to a CPLLP affiliate (the "CPLLP License").  *Id.* ¶ 18.

The CPLLP License covered all countries and regions worldwide, except countries that were part

of the former Soviet Union.  *Id.* ¶ 19.  The period of the CPLLP License was initially from 2005

through 2014, but CPLLP extended the license through 2024 by paying SMF $30,000.  *See id.*

¶ 21; ECF No. 50-13 at 3 (CPLLP Agreement); ECF No. 50 at 27–28; ECF No. 49-6 at 99:21–

101:23 (Dep. Tr. of SMF 30(b)(6) Witness).

LaRubInt attempted to resolve the conflict commercially with Director Davydov's help.

*See* ECF No. 50-1 ¶ 24.  In December 2016, Director Davydov provided a statement confirming

LaRubInt's exclusive rights to market the Cheburashka Characters in Japan and elsewhere.  *Id.*;

*see* ECF No. 49-8 at 3 (Davydov Statement).  And in March 2017, Director Davydov wrote a

letter to CPLLP encouraging a "comprehensive solution" to the conflicting licenses and urging

CPLLP to enter into a sublicense agreement with LaRubInt.  ECF No. 50-1 ¶ 26; *see* ECF

No. 49-10 at 2 (Davydov Letter).  These attempts to resolve the conflicting agreements were

unsuccessful.

### C.    SMF's Management Changes

Director Davydov's employment with SMF ended in April 2017 and the Russian government appointed a new team at the management and board levels.  ECF No. 50-1 ¶¶ 27, 28.  In late 2017, Ms. Rubstein wrote to SMF's new director, seeking SMF's assistance in resolving the CPLLP dispute.  *Id.* ¶ 30; *see generally* ECF No. 49-11 (LaRubInt-SMF Email Correspondence, Sept. 2017 – Mar. 2018).  Her email described the problems presented by CPLLP's continuing sales of Cheburashka Characters merchandise in Japan, recounted CPLLP's contention that the CPLLP License was valid through December 2024, and asked for SMF's cooperation if a Japanese court raised questions about the Licensing Agreements.  *See* ECF No. 50-1 ¶ 30.  SMF did not respond for four months.  *Id.* ¶ 31; ECF No. 49-11 at 6.

In January 2018, SMF's legal department invited Ms. Rubstein to Moscow to discuss the status of the licensing rights in Japan.  ECF No. 50-1 ¶ 31.  Ms. Rubstein traveled to Moscow and brought a draft letter for SMF's director to sign.  *Id.* ¶ 32.  The letter, addressed to CPLLP's Japanese attorneys, would have confirmed LaRubInt's exclusive rights to the Cheburashka Characters in Japan and called upon CPLLP to cease all use of the Cheburashka Characters.  *Id.*  SMF refused to sign the letter.  *Id.* ¶ 33.

### D.    Japanese Litigation

In June 2018, LaRubInt commenced litigation against CPLLP in the Tokyo Court Civil Division (the "Japanese Litigation").  *Id.* ¶ 29.  CPLLP argued that LaRubInt did not have a valid license and requested that LaRubInt obtain a written acknowledgment from SMF that the Licensing Agreements were in effect.  *Id.* ¶ 45.  Twice, in February and September 2019, LaRubInt sought confirmation from SMF that the Licensing Agreements were valid and further requested that SMF terminate any license rights asserted by CPLLP.  *Id.* ¶ 46.  SMF did not

respond to either request. *Id.* On June 25, 2020, the Japanese court issued a decision dismissing LaRubInt's claim to uphold the exclusivity of the Licensing Agreements in Japan. *Id.* ¶ 47; ECF No. 49-15 at 2 (Japanese Court Judgment). The Japanese court explained that it could not conclude whether the Licensing Agreements were exclusive because SMF "did not respond in any way" to requests by the parties in the Japanese Litigation. ECF No. 49-15 at 7.

Meanwhile, in late 2018, SMF invited CPLLP to Moscow to "discuss our Cheburashka deal status and present you new projects." ECF No. 50-1 ¶ 34. SMF's Director, Board Chair, and Head of the Legal Department met with CPLLP and proposed a new licensing agreement. *Id.* ¶¶ 35, 36. SMF's presentation described the Cheburashka Characters as "twice sold" and suggested a way forward. ECF No. 49-7 at 3 (SMF Slide Deck). SMF proposed that CPLLP sue both LaRubInt and SMF "to declare [the] contract with LaRubInt invalid and to confirm [the CPLLP License] as valid." *Id.* at 4. SMF explained that if CPLLP sued in Russia, the "probability of deal win is high." *Id.* As a condition for this arrangement, CPLLP would have to "sign the cancellation of the current agreement" and pay SMF "additional consideration." *Id.* at 6; *see* ECF No. 49-12 at 112:22–24 (Dep. Tr. of SMF Head of Legal Department) ("There was a possibility of a future agreement, but with a condition of compensation for the past period.").

## LEGAL STANDARD

Summary judgment is appropriate where the movant meets its burden to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

6

(1986).  "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  A nonmoving party asserting that a fact is genuinely disputed must support the assertion by citing to materials in the record or showing that the materials cited do not establish the absence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party."  *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

## DISCUSSION

### I.    Plaintiff's Breach of Contract Claims

The Court grants summary judgment on Plaintiff's breach of contract claims.  To establish a breach of contract claim under New York law,[4] a movant must satisfy the following four elements:  (1) the existence of a contract; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages.  *North Am. Photon Infotech Ltd. v. ZoomInfo LLC*, No. 22-cv-1979, 2024 WL 4799843, at *1 (2d Cir. Nov. 15, 2024). LaRubInt has met its burden to show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law on its breach of contract claims.

---

[4]     There is no dispute that New York law governs the Licensing Agreements.  *See* LAs at art. 7.2; ECF No. 1 ¶ 11; ECF No. 12-1 at 10 (SMF Motion to Compel Arbitration) ("New York law applies to any claims related to the Licensing Agreements at issue."); ECF No. 50 at 8 (invoking New York contract law).

A.    *The Three Licensing Agreements Are Valid*

There is no genuine dispute as to the validity of the Licensing Agreements.  A contract

exists and is valid if there is (1) an offer and acceptance, (2) consideration, (3) mutual assent, and

(4) an intent to be bound.  *Com. Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14-cv-7483,

2017 WL 3432073, at *6 (E.D.N.Y. Aug. 8, 2017).  Here, the first three elements are not

disputed.  And until the filing of this motion, the fourth element was not disputed either.  In

response to the instant motion, SMF claims for the first time that the Licensing Agreements are

invalid.  ECF No. 50 at 7.  SMF argues that the Licensing Agreements are not binding on it

because they were (i) not approved by the Ministry of Culture as required by the Russian

Federation and (ii) unauthorized pursuant to SMF's bylaws.  *Id.* at 8.  The Court easily disposes

of these arguments.  Plaintiff is correct that SMF forfeited its challenges to the validity of the

Licensing Agreements by ratifying the agreements, *see* ECF No. 53 at 9–10, and waived any

claims of invalidity by its contrary representations to the Court, *see id.* at 4–5.

Where a party ratifies a contract, it cannot succeed on defenses asserting that it should not

be bound by the contract.  *Sotheby's Fin. Servs., Inc. v. Baran*, No. 00-cv-7897, 2003 WL

21756126, at *6 (S.D.N.Y. July 29, 2003), *aff'd*, 107 F. App'x 235 (2d Cir. 2004).

Circumstances in which a party will be deemed to have ratified a contract include:

(i) intentionally accepting benefits under the contract, (ii) remaining silent or acquiescing in the

contract after having the opportunity to avoid it, or (iii) acting upon, performing under, or

affirmatively acknowledging the contract.  *Glover v. Bob's Disc. Furniture, LLC*, 621 F. Supp.

3d 442, 448–49 (S.D.N.Y. 2022).  If, after learning that an agreement is voidable, a party retains

the consideration it received under that agreement, the party's continued retention constitutes

ratification of the agreement.  *Fiore v. McDonald's Corp.*, No. 95-cv-2708, 1996 WL 91908, at

*8 (E.D.N.Y. Feb. 23, 1996). "A party cannot be permitted to retain the benefits received under a contract and at the same time escape the obligations imposed by the contract." *Id.* Here, it is undisputed that SMF accepted LaRubInt's total payments of $60,000 as consideration for the licensing rights contained in the three Licensing Agreements and, to date, has never returned that money. *See* ECF No. 50-1 ¶ 14; ECF No. 47 at 18; ECF No. 50 at 15. Therefore, SMF ratified the Licensing Agreements and is precluded from challenging their validity.

Moreover, SMF cannot selectively seek to enforce portions of the Licensing Agreements when doing so benefits it, while also challenging the validity of those agreements when it does not. *See McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, No. 22-cv-1138, 2024 WL 4336654, at *10 (S.D.N.Y. Sept. 27, 2024) (party cannot sue for breach of contract while in tandem arguing that the contract is unenforceable); *Conocophillips v. 261 E. Merrick Rd. Corp.*, 428 F. Supp. 2d 111, 126 n.4 (E.D.N.Y. 2006) (party challenging the validity of a contract cannot seek to enforce just that portion of the contract which benefits it). But that is precisely what SMF attempts to do here. Throughout the litigation—including in its motion to compel arbitration, Amended Answer and Counterclaims, and Rule 30(b)(6) deposition testimony—SMF and its executives have referred to the Licensing Agreements as valid and enforceable. SMF sought to compel arbitration because, according to SMF, the Licensing Agreements contained "valid and enforceable" arbitration provisions. ECF No. 12-1 at 9. SMF raised affirmative defenses such as Plaintiff's failure to perform its obligations under the agreements, failure to mitigate, consent to Defendant's actions, and ratification—which rely on, or imply, the existence of a valid contract—but SMF did not raise *any* affirmative defenses challenging contractual validity. *See* ECF No. 19 at 5–10. SMF brought counterclaims against LaRubInt alleging breach of the Licensing Agreements, fraudulent inducement, and breach of the implied covenant of good faith

and fair dealing.  *See id.* 18–20.  During discovery, SMF's Rule 30(b)(6) witness testified that "LaRubint had a full-force contract in their hands," ECF No. 49-6 at 131:19–132:2; SMF considered "both contracts [with LaRubInt and CPLLP] in full force," *id.* at 152:5–6; "LaRubint had a valid contract," *id.* at 162:20; and agreed that in June 2020 "the LaRubint license was in full force and effect," *id.* at 190:17–22.  At bottom, there is no genuine dispute regarding the Licensing Agreements' validity, notwithstanding SMF's attempts to muddy the waters in response to the instant motion.

### B.  *Plaintiff Adequately Performed Its Obligations*

The parties do not dispute that the Licensing Agreements required LaRubInt to pay SMF $20,000 per license as a "guaranteed minimum" and that LaRubInt timely paid in full.  ECF No. 50-1 ¶ 14.  SMF argues, however, that LaRubInt did not adequately perform its obligations because LaRubInt did not exploit the licenses.  ECF No. 50 at 24.  This argument is unsupported by a plain reading of the Licensing Agreements.  The Licensing Agreements do not contain efforts clauses (*e.g.*, best efforts, reasonable efforts, or commercially reasonable efforts), nor lead to the conclusion that the parties intended to impose such obligations on LaRubInt to market Cheburashka Characters merchandise.  *See Sharkey v. Zimmer USA, Inc.*, No. 20-cv-8258, 2021 WL 3501160, at *6 (S.D.N.Y. Aug. 9, 2021) ("A duty arising from the implied covenant must be one which the parties could reasonably expect to arise from their contractual relationship.").  The agreements specifically include the following language:

> 2.2.4.   The Company [*i.e.*, LaRubInt] shall attract any other entities or professionals for the production of the Goods (services) and/or their packaging and/or promotional/marketing/advertising materials.  *The Company shall be entitled to determine the number of the Characters' use and to set the volume of necessary batches, copies and/or number of instances at its sole discretion. At its own discretion*, the Company shall also be entitled to set the maximum number of uses with regards to intellectual property rights for sublicensees, as it deems necessary.

LAs at art. 2.2.4 (emphasis added).  A plain reading of this provision makes clear that LaRubInt

had unconditional and sole discretion for how, how much, and which copyrighted characters to

market.

Recognizing this, SMF argues that there was nevertheless an "implied duty to exploit"

the licenses.  ECF No. 50 at 24–26.  SMF, digging deep into New York jurisprudence, relies on

Justice Cardozo's opinion in *Wood v. Lucy, Lady Duff-Gordon,* 118 N.E. 214, 214–15 (N.Y.

1917), and its progeny.  Yet in *Wood* and many of the cases cited by SMF, royalty payments

were the *only* compensation for an exclusive license.  *See id.* at 215.  That is not the situation

here.  Indeed, "courts often have suggested that a duty to use reasonable efforts to exploit a

license should be implied only when the resulting royalties, as in *Wood,* constitute the sole

consideration that the licensor will receive."  *Palazzetti Imp./Exp., Inc. v. Morson*, No. 98-cv-

722, 2001 WL 1568317, at *6 (S.D.N.Y. Dec. 6, 2001) (collecting cases), *aff'd,* 54 F. App'x 698

(2d Cir. 2002).

SMF correctly observes that courts have occasionally implied a covenant requiring a

licensee to exploit a license even when a licensor received a guaranteed minimum royalty or

upfront fee.  *See, e.g., id.* at *7.  In those cases, courts looked to the written agreements and all

the surrounding circumstances to determine whether there was an implied promise.  Here,

however, SMF's argument is not supported by a plain reading of the Licensing Agreements.  Nor

does SMF "come forward with specific evidence" or cite to any materials in the record that

demonstrate that similar surrounding circumstances[5] exist (or even that they are disputed), as

---

[5]      SMF's reliance on *Reback v. Story Products, Inc.*, 181 N.Y.S.2d 980 (N.Y. Sup. Ct.
1958), *aff'd*, 193 N.Y.S.2d 520 (N.Y. App. 1959), and *Palazzetti*, 2001 WL 1568317, is
misplaced.  In *Reback*, the exclusive license was "for the entire world, in perpetuity[.]"  181
N.Y.S.2d at 983.  Here, the Licensing Agreements are limited to five years.  *See* LAs at art. 1.5.

required at this stage. *Brown*, 654 F.3d at 358; *see* Fed. R. Civ. P. 56(c)(1). At best, SMF improperly references settlement negotiations, arguing that Plaintiff values the Licensing Agreements as "having a much higher value than the $20,000 minimum payment," while simultaneously characterizing Plaintiff's valuation as "overly distorted." ECF No. 50 at 25–26. That is not record evidence and, in any event, the Court will not consider the substance of settlement negotiations in deciding this motion. *See Lee v. Santiago*, No. 12-cv-2558, 2013 WL 4830951, at *14, n.13 (S.D.N.Y. Sept. 10, 2013) ("The Court considers it inappropriate to disclose the substance of the parties' settlement negotiations, and will not consider those negotiations here."). Therefore, there is no genuine dispute that LaRubInt adequately performed its contractual obligation by paying SMF $60,000.

### C.    *SMF Breached the Licensing Agreements*

SMF breached the Licensing Agreements' Representations and Warranties that the licensing rights were free of any obligations to third parties. LaRubInt claims that SMF breached by giving both CPLLP and LaRubInt the right to market the Cheburashka Characters in the same territories. *See* ECF No. 47 at 5–6, 18–20. According to LaRubInt, this resulted in CPLLP's prior license running concurrently with the exclusive licenses[6] granted to LaRubInt, "rendering

---

And in *Palazzetti*, the court's decision was based on multiple "facts and circumstances, taken together," none of which SMF addresses. 2001 WL 1568317, at *7–8.

[6]    SMF claims that LaRubInt should be estopped from arguing the Licensing Agreements' exclusivity under principles of *res judicata* because the Japanese court did not find that LaRubInt had an exclusive license. *See* ECF No. 50 at 29. SMF's argument is unavailing. *Res judicata* bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action. *Gesualdi v. S. DiFazio & Sons Constr., Inc.*, No. 16-cv-5209, 2020 WL 6370242, at *4 (E.D.N.Y. July 28, 2020), *report and recommendation adopted*, 2020 WL 5269552 (E.D.N.Y. Sept. 4, 2020). "The burden is on the party seeking to invoke *res judicata* to prove that the doctrine bars the second action." *Id.* SMF was not a party to the Japanese Litigation, nor was SMF in privity with CPLLP. *See id.* Indeed, the Japanese court explained

all of the rights [LaRubInt] had contracted and paid for a nullity, and blocking all avenues to enter the lucrative regional markets, particularly Japan, under the license." *Id.* at 5. The relevant provision of the Licensing Agreements states:

> 4.2. *The Copyright Holder guarantees* that it is the legitimate copyright holder provided to the Company hereunder, *that these rights are free of any obligations to third parties and not burdened by them*, and that *there are or will be no* contracts, agreements, licenses, permits, obligations, etc. concluded by the Copyright Holder preventing the Company and/or its authorized representatives to use the Characters in accordance herewith.

LAs at art. 4.2 (emphasis added).

SMF does not contest the obligations set forth in Article 4.2. Instead, SMF argues that Article 4.2 was not breached because when CPLLP's license was supposed to expire in 2014, CPLLP used "some kind of trick to extend the contract for nine more years." ECF No. 50 at 27–28. The "trick"? CPLLP paid SMF $30,000, SMF kept the money, and the term of the contract was extended. ECF No. 49-6 at 99:21–101:23. There is no evidence that CPLLP did anything other than what was previously agreed to by SMF in the CPLLP License. Article 5.2 of the CPLLP License provided that the license could be extended "for another 10 years by means of payment to the benefit of SMF 30 thousand US $. In the future – similarly." ECF No. 50-13 at 3. It is undisputed that SMF did not reject the money, return the money, or otherwise repudiate the contractual extension with CPLLP. Yet SMF argues, without any apparent irony, that "Plaintiff should not be permitted to punish SMF, or impute liability to it, for the rogue acts of a third party." ECF No. 50 at 28. Doubling down, SMF seeks credit for not entering into *any other*

---

that it could not conclude whether the Licensing Agreements were exclusive because SMF "did not respond in any way" to requests by the parties in the Japanese Litigation. ECF No. 49-15 at 7. Accordingly, *res judicata* does not apply here.

13

*agreements* during the first five years of LaRubInt's license, or receiving any royalty payments[7] from CPLLP.  *See id.*

From the undisputed evidence, the Court concludes that SMF breached Article 4.2 by representing to LaRubInt that the licensing rights "are free of any obligations to third parties and not burdened by them," and that "there are or will be no contracts, agreements, licenses, permits, obligations, etc." entered into by SMF that would prevent LaRubInt from using the Cheburashka Characters.  The undisputed evidence shows that there were indeed such third-party obligations.[8]

### D.    *Plaintiff Has Been Damaged by SMF's Contractual Breaches*

There is no genuine dispute that Plaintiff suffered damages as a result of SMF's breaches. At the very least, LaRubInt was damaged by paying SMF $60,000 in exchange for exclusive licenses that were not actually exclusive and never getting its money back.  *See* ECF No. 50-1 ¶ 14.  Regardless, "New York law provides that nominal damages are always available in a breach of contract suit."  *See Saeco Vending, S.P.A. v. Seaga Mfg., Inc.*, No. 15-cv-3280, 2016 WL 1659132, at *7 (S.D.N.Y. Jan. 28, 2016).  Even if the breach of contract caused no actual loss or if the amount of the loss cannot be proven with sufficient certainty, Plaintiff is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any. *Hallingby v. Hallingby*, 693 F. Supp. 2d 360, 369 (S.D.N.Y. 2010), *aff'd*, 453 F. App'x 121 (2d

---

[7]    SMF attaches the CPLLP License as an exhibit but omits the pages with provisions related to royalty payments.  *See* ECF No. 50-13 at 5.  Therefore, there is no evidence before the Court of CPLLP owing royalty payments to SMF.

[8]    LaRubInt also argues that SMF (i) breached the Licensing Agreements by failing to provide requisite assistance and litigation support to LaRubInt in the Japanese Litigation, and (ii) breached the covenant of good faith and fair dealing by actively soliciting CPLLP to "join in a conspiracy to void LaRubInt's contractual rights."  *See* ECF No. 47 at 19–20.  The Court does not address these additional theories because its finding that SMF breached the Representations and Warranties is sufficient to grant summary judgment on LaRubInt's breach of contract claims.

Cir. 2012). Because SMF breached the Licensing Agreements, the availability of nominal damages alone is sufficient to establish injury for liability purposes, even in the absence of actual damages.

## II.     Plaintiff's Unjust Enrichment Claims

The Court denies summary judgment on Plaintiff's unjust enrichment claim and dismisses the claim. Plaintiff cannot recover on its unjust enrichment claim as a matter of law. "[U]njust enrichment is a quasi-contract claim that can ordinarily be invoked only in the absence of a valid, enforceable contract." *FDIC v. Murex LLC*, 500 F. Supp. 3d 76, 120 (S.D.N.Y. 2020). "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Id.* Because the Court has already found that SMF is liable for breach of contract, and because unjust enrichment would be duplicative of that claim, the Court denies Plaintiff's motion for summary judgment as to unjust enrichment and dismisses that claim *sua sponte*. *See Professional Merch. Advance Cap., LLC v. C Care Servs., LLC*, No. 13-cv-6562, 2015 WL 4392081, at *6 (S.D.N.Y. July 15, 2015) (dismissing unjust enrichment claims *sua sponte* at summary judgment); *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (affirming summary judgment dismissing unjust enrichment claims because contractual relationships existed).

\*            \*            \*

Plaintiff has prevailed on its breach of contract claim and may pursue damages for SMF's breach of contract at trial. The Court notes that, in light of the findings in this decision, SMF's counterclaims appear to no longer be viable. *See, e.g., Sotheby's Fin. Servs., Inc. v. Baran*, 107 F. App'x 235, 237 (2d Cir. 2004) (ratifying an agreement forecloses claims of fraud or fraudulent inducement); *Choice Money Transfer, Inc. v. Societe Int'l de Change, Arimec, LLC*, No. 17-cv-

2639, 2017 WL 6507108, at *4 (S.D.N.Y. Dec. 18, 2017) (viability of counter-claim for breach of contract is tied to plaintiff's breach of contract claim because if defendants breached the contract first, then they cannot establish their own performance of the contract).  The parties shall file a joint letter on or before July 3, 2025, not to exceed five pages, identifying what (if any) issues, other than the determination of damages on Plaintiff's breach of contract claim, remain to be tried at trial in light of this decision.  The parties shall also indicate in the letter whether they wish to be referred to the Court-annexed mediation program or to Magistrate Judge Levy for a settlement conference.

## **<u>CONCLUSION</u>**

For the reasons explained herein, Plaintiff's motion for summary judgment with respect to liability on its breach of contract claims under the three Licensing Agreements is GRANTED. Plaintiff's motion for summary judgment with respect to liability on its unjust enrichment claim is DENIED and Plaintiff's unjust enrichment claim is dismissed.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
June 19, 2025

16